BURCKLE *vs.* ECKART, impleaded with Gibb and others.

A bill in chancery must show on its face that the vice chancellor before whom it is filed has jurisdiction of the cause ; and if jurisdiction does not so appear the decree will be void.

Where a bill is filed to compel an account of the profits of a copartnership transaction in the manufacture and sale of flour, the subject matter of the controversy has no locality within the purview of the statute distributing the jurisdiction of matters in equity among the vice chancellors.

Where by a contract executed at Oswego, the complainant was to manufacture flour at that place and deliver it to the defendants in Canada where they resided, who were to dispose of it there and account for the net profits, and a bill was filed before the vice chancellor of the fifth circuit, for an account; *held* that the *cause or matter* did not arise within the fifth circuit, and that the vice chancellor had no jurisdiction.

Where a contract is made at one place and is to be performed at another, the latter is the location of a controversy arising upon the contract.

ASSUMPSIT, tried before EDMONDS, C. Judge, at the New-York circuit in November, 1845. The action was upon a written ·agreement dated March 2d, 1841, signed by the plaintiff and by James Gibb & Co., which is set forth in the report of this case,

[279]

when formerly before the court, in 1 *Denio*, 337. It will be seen from the case as reported, that the principal question upon the first trial was, whether the defendant Eckart was a member of the firm of James Gibb & Co., and that a verdict for the plaintiff was set aside because the evidence did not establish that fact. On the second trial the plaintiff, in addition to the proof he had before given, gave in evidence an exemplification of the pleadings and proceedings and the decree in a suit in the court of chancery, before the vice chancellor of the fifth circuit, between the parties in this suit, the plaintiff being the complainant. The bill described the plaintiff as a resident of Oswego in this state, and the defendants as residents of Quebec in the province of Lower Canada. It set out the agreement declared on in this suit, which it averred was executed by the defendants, by and under the name, style and firm of James Gibb & Co. The object of the bill was to compel the defendants to account for the profits of a quantity of flour which the plaintiff had delivered at Kingston pursuant to the contract. It was taken as confessed for the want of an answer, the defendants having appeared by a solicitor. The decree, which was entered on the 20th day of May, 1845, declared that the defendants entered into the contract set out in the bill, at the time of its date, as members of the firm of James Gibb & Co., and that the parties proceeded in the execution of the provisions contained in it until October, 1841, when the defendants refused to receive any more flour or further to perform on their part, the complainant having fully performed on his part and being ready to proceed with the further execution of the contract; and that the defendants were indebted to the complainant in $3539,48, for one third of the net profits of flour delivered under the contract and accepted and sold by the defendants, which sum the defendants were decreed to pay the complainant, together with the costs of the suit. Having given this proof, the plaintiff offered to read the contract in evidence, to which the defendants objected, on the ground that it had not been proved that the defendant Eckart was a partner with the other defendants, or that he was a party to the contract. The judge overruled the objection and the contract

was read. The defendants' counsel excepted. Other evidence was given, and the judge ultimately charged, among other things, that the decree in the chancery suit conclusively settled that the defendants were partners, and as such were all parties to the contract. The defendants' counsel again excepted. Verdict for the plaintiff. It is unnecessary to state the other points made, as the opinion of the court was confined to the validity and effect of the decree in chancery. The defendants moved for a new trial on a case.

*H. Brewster & G. Wood,* for the defendants, insisted that the vice chancellor had no jurisdiction of the suit prosecuted in chancery, and that the decree was therefore void; and referred to 2 *R. S.* 168, § 2; *Bicknell* v. *Field,* (8 *Paige,* 440;) *Phelps* v. *Garrow,* (3 *Edwards' R.* 139;) *Latham* v. *Edgerton,* (9 *Cowen,* 227, 229;) *Cowen & Hill's Notes, p.* 826. The *cause* and *matter,* they said, arose where the contract was to be performed. (*Butterfield* v. *Windle,* 4 *East,* 385.)

*S. Stevens,* for the plaintiff. The contract was made in the district. That is sufficient to give the vice chancellor jurisdiction. Besides, the court of chancery is a court of general jurisdiction and its decrees cannot be questioned collaterally.

*By the Court,* JEWETT, J. Is there evidence showing that Eckart was one of the members of the firm of James Gibb & Co. who signed and made the contract with the plaintiff, on which he sues? If not, there must be a new trial on that ground. The judge charged that the decree in chancery established that fact conclusively. Conceding that it does in terms, it is still objected that it is void on the ground that the vice chancellor, before whom the bill was filed and by whom the decree was made, had no jurisdiction of the subject matter, or of the defendants.

The vice chancellor had only such jurisdiction as is conferred by statute. (2 *R. S.* 168, § 2.) That limits it to three cases: 1. Where the causes and matters shall have arisen within his circuit; or 2. When the subject matter in controversy is situated

there; and 3. When the defendants or either of them reside in that circuit.

Enough should appear from the bill to show that the vice chancellor before whom it was filed had jurisdiction. It cannot be presumed. Jurisdiction was not acquired by reason of the residence of the defendants, or either of them, within his circuit; for the bill states that they resided in Canada. It was not acquired by reason of the locality of the subject matter of the bill, as it had no locality, and therefore could not have been situated within the circuit of the vice chancellor; nor is there any allegation of that kind in the bill. Does it appear by the bill that the *cause or matter of complaint* arose within the fifth circuit? If not, it follows that it is not shown by the bill that the vice chancellor had jurisdiction. The bill fails to show a single fact happening within the fifth circuit in relation to the subject matter of the complaint. It is not even alleged that the contract between the plaintiff and Gibb & Co. was made within that circuit; though by the *evidence* it appears to have been made at Oswego. The bill was for an account and payment to the plaintiff of one third of the net profits realized by the defendants upon the sale of certain flour which the plaintiff had delivered to them at Kingston, Upper Canada, pursuant to their contract, and which the defendants had received and were bound by the contract to pay the plaintiff upon such sale at that place. The *cause and matter in equity* in that suit, as disclosed by the bill, clearly arose in Canada. That was the place where the contract was to have been performed and where the breach of it was committed. That *breach*, and not the making of the contract, was the matter or cause of complaint.

My conclusion is that the vice chancellor is not shown to have had jurisdiction; consequently his decree is void, and cannot avail the plaintiff for any purpose. (*Borden* v. *Fitch*, 15 *John.* 121; *Mills* v. *Martin*, 19 *id.* 33; *Latham* v. *Edgerton*, 9 *Cowen*, 227; *Cowen & Hill's Notes, p.* 826.) A new trial must be granted on this ground, which renders it unnecessary to examine other questions made in the case.

New trial granted.