## SUPREME COURT.

PRESIDENT AND DIRECTORS OF THE BANK OF COMMERCE agt. THE RUTLAND AND WASHINGTON RAILROAD COMPANY.

A bill of exchange was drawn by the defendant, a railroad company, by its president, in Poultney, in the state of Vermont, in which state the company was chartered, payable four months from date at the Exchange Bank in New-York, and upon J. W. Baldwin, treasurer of the company in Boston; and accepted in Boston by J. W. Baldwin as treasurer, payable at the Exchange Bank in New-York, and endorsed by J. W. Baldwin, treasurer, and sold to the Bank of Commerce in Boston; and payment demanded at maturity at the Exchange Bank in New-York and refused, and the bill protested: *held*, that, although the company could be treated as acceptor of the bill, or maker of a promissory note, and sued without presentment for payment at the Exchange Bank in New-York, yet the cause of action arose in this state; and the Bank of Commerce could sue the company and attach its property in this state.

When a contract is made at one place, but is to be performed at another, as to its validity, nature, obligation, and interpretation, it is to be governed by the law of the place of performance.

The breach of duty is the substantial cause of action.

What is meant by the phrase, " the cause of action arose ?"

Foreign corporations have a right to bring suits in this state.

The provisions of the Revised Statutes, authorizing suits against foreign corporations, as amended in 1849, are not repealed by the Code.

Under the Code, a suit may be brought against a foreign corporation, it seems, without an application in writing, or affidavit, or attachment.

Service here upon the superintendent and general managing agent of a foreign railroad corporation, in the possession of, and using a railroad in this state, is a good service within § 134 of the Code.

*It seems*, a judgment against a foreign corporation, in a suit properly brought under the Code, is of the same validity and effect as a judgment against any nonresident obtained without personal service or appearance.

President, &c., of Bank of Commerce agt. The Rutland & Washington R. R. Co.

A motion to set aside an attachment against a foreign corporation may be made, in the first instance, directly to the court.
And affidavits may be read on both sides, on such motion.

*Washington County Special Term, June,* 1854.—This was an application by the defendant to discharge and set aside the attachment issued in the cause, and all proceedings on the part of the plaintiffs.

The attachment was granted by a county judge upon the following affidavit: "The President, Directors, and Company of the Bank of Commerce agt. the Rutland and Washington Railroad Company. County of Washington, ss. Abel G. Farwell, of Boston, being duly sworn, says he is one of the plaintiffs' directors in this action, and is the agent of the plaintiffs.

"That the above-named defendants are indebted unto the said plaintiffs upon a bill of exchange for twenty-five thousand dollars, dated January 2d, 1854, directed to James W. Baldwin, treasurer of said defendants at the city of Boston, Massachusetts, and requesting him, four months after date, to pay to the order of James W. Baldwin, treasurer at the American Exchange Bank, New-York, twenty-five thousand dollars, value received, and signed the Rutland and Washington Railroad Company, by W. C. Clark, president, and accepted, payable at the American Exchange Bank, New-York, N. Y. Signed James W. Baldwin, Treasurer Rutland and Washington Railroad Company, and endorsed James W. Baldwin, treasurer; and which said bill was afterward duly endorsed and delivered to the said plaintiffs, and by them duly presented for payment, and duly protested for nonpayment of the same, nor of any part thereof has payment been made, and the said plaintiffs are now the holders and owners of the same.

"And this deponent further says, that said defendant is a foreign corporation, having its office and place of business at Poultney, Vermont, and having been incorporated by the legislature of the state of Vermont.

"And deponent further says, that a summons in this action has been duly served upon the said defendant, by delivery thereof personally to Thomas H. Canfield, the superintendent

and general managing agent of said defendant, which service was this day made at Salem, in the county of Washington, which summons was left with him. A. G. Farwell.—Sworn to before me this 9th day of May, 1854, James Gibson, Wash. Co., Judge."

The bill of exchange mentioned above was as follows:—

"Office of the Rutland and Washington Railroad Company, West Poultney, Vt., Jan. 2d, 1854. Four months after date, pay to the order of James W. Baldwin, treasurer, at the American Exchange Bank, New-York, twenty-five thousand dollars, value received. The Rutland and Washington Railroad, by W. C. Clark, President of the Rutland and Washington Railroad Company. To James W. Baldwin, Treasurer Rutland and Washington Railroad Company, Boston, Mass. $25,000. Accepted. Payable at the American Exchange Bank, New-York. James W. Baldwin, Treasurer Rutland and Washington Railroad Co. (Endorsed) James W. Baldwin, Treasurer."

It appeared by the moving affidavits that the defendant was a foreign corporation, chartered by the state of Vermont, and having its office at Poultney in that state; and the plaintiff was a bank corporation, chartered by the state of Massachusetts, and located in Boston. That T. H. Canfield was the defendant's superintendent and general managing agent at the time the summons and attachment were served; and that the sheriff had seized property belonging to defendant to the amount of $40,000. That a summons and attachment were served,—the summons being served on Mr. Canfield.

The affidavits on the part of the plaintiffs stated that Farwell was a director and agent of the Bank of Commerce; that the cause of action arose in this state, and that the suit was commenced by service of the summons before the attachment was issued. That about forty miles of the road of the defendant were in the county of Washington, in this state, and the corporation was in possession of cars, engines, &c., here. That the plaintiffs paid the money to the defendant's treasurer for the bill of exchange, upon which the suit is brought; and that payment having been refused upon being regularly demanded,

it had been protested.    That the defendant had leased its prop-
erty to T. H. Canfield to keep it from its creditors; and if the
attachment should be set aside, the plaintiffs would lose their
debt; and that subsequent attachments have been issued against
the defendant.

J.  C.  HOPKINS, *for the motion.*
L.  J.  HOWE, *for the plaintiffs.*

HAND, Justice.    It appears by the affidavit of Farwell, upon
which the attachment was granted, and also on the affidavits
read on both sides on this motion, that Mr. Canfield, on
whom the summons was served, was the superintendent and
general managing agent of the defendant, and they were oper-
ating their road and doing a large business here.    Upon such
an officer or agent service can be made within § 134 of the
Code.

The interpretation of our statutes, in relation to suits against
foreign corporations, is not free from difficulty.    The revised
statutes authorized a resident of the state to commence a suit
against them in the supreme court, by an attachment. (2 *R. S.*
459, § 15.)    In 1849 that statute was altered, by authorizing
suits against them, (in that court, and in the superior court, and
court of common pleas in New-York,) for the recovery of any
debt or damages " arising upon contract made, executed, or de-
livered within this state, or upon any cause of action arising
therein;" which suits " may be commenced by complaint and
summons, together with an attachment as now provided by law,
and such complaint and summons may be served," as provided
by §§ 113, 114 of the Code. (*Laws of* 1849, *ch.* 107.)    The
title of the revised statutes, which included this section, was
retained by § 390 of the Code of 1848.    The revision of the
Code, in April, 1849, provided for service of summons on cer-
tain of its officers, &c., in suits against " a corporation," (§ 134,)
and on foreign corporations by publication, (§ 135;) and also
for an attachment against them. (§§ 227, 229.)    A new section
was also added, authorizing suits against foreign corporations
by a resident of the state, for any cause of action; and by a

President, &c., of Bank of Commerce agt. The Rutland & Washington R. R. Co.

nonresident "when the cause of action shall have arisen, or the subject of the action shall be situated within the state." (§ 427.) But the provisions of the revised statutes on the subject were excepted as before. (§ 471.) By the amendments of the Code in 1851, which are still in force, service of a summons can be made upon the officers, &c., of a foreign corporation, only when it has property within this state, or the cause of action arose therein; (§ 134;) and in those cases, too, service may be made by publication. (§ 135.) No change was made in 1851 and in 1852 in section 427; nor were any amendments then made materially affecting the question before us in § 471, or those relating to attachments. But § 471 was slightly amended in 1852, and yet the clause that excepted this title of the revised statutes was retained. This shows that it was intended those provisions should still remain in force, though probably the pleadings and practice, except where otherwise specially provided, should be under the Code.

These suits, however, are not alike in all respects. The circumstances under which they may be commenced are not the same. (*Laws of* 1849, *ch.* 107; *Code,* § 134-5, 427.) And the bond in one case is for costs, and in the other the undertaking is for costs and damages; and in one suit it would seem to be for the benefit of the plaintiff; other creditors are allowed to share in the proceeds in the other. (2 *R. S.* 461, § 30; *Code,* § 237.) In one case, I think, there must be an application and an affidavit, and an attachment must issue; in the other, none of these seem to be necessary to the prosecution of the suit. There are other distinctions not important here. It has been intimated that there can be no proceeding against a foreign corporation other than against its property. But the Code makes no distinction in respect to the manner and effect of entering judgment against corporations and against others. All remedies in equity, too, are now enforced in this court; and § 427 is not consistent with the rule suggested. There are cases where a suit against a foreign corporation may be necessary, though not for the "recovery of money." (§ 227.) What effect would be given to such a judgment in another state even

where service is made upon the president, &c., here, is another matter. (D'Arcy agt. Ketchum, 11 *How.* 165; Louisville Railroad Co. agt. Letson, 2 *Id.* 497.) ´Service on an officer or agent may not be tantamount to personal service upon a private person. (*Ang. and Ames on Corp.* 395–403.)

The counsel for the plaintiffs claims that the attachment is valid under either statute. But, as I understand the affidavits, the suit was brought under the Code, and of course must conform thereto.

There has been some diversity of opinion, whether a motion to set aside an attachment can be made directly to the court; and, if so, whether any, and what affidavits can be used on the motion. (Morgan agt. Avery, 7 *Barb.* 656, 664; Genin agt. Tompkins, 12 *id.* 265; *in re, Griswold,* 13 *id.* 412; Conklin agt. Dutcher, 5 *How.* 386; White agt. Featherston, 7 *id.* 357; Bank of Lansingburgh agt. McKie, *id.* 360; *Voorhies' Code,* § 229, 241.)

It seems to me, with all respect, that it is correct practice for the court to entertain a motion in the first instance. This court has general jurisdiction in law and equity; (*Const. Art.* 6, § 3;) and certainly must have power over all orders and process made or issued in a cause pending therein. And the attachment, especially when a suit is pending under the Code, may be deemed of the nature of a process of the court, and, on the question of jurisdiction, unlike a mere special proceeding. And I see no objection to the use of affidavits on both sides. The attachment issues *ex parte,* and it seems unjust that property to any amount, in this case said to be forty thousand dollars, should be taken out of the hands of the owner, and in some cases sold, &c., upon the mere *ex parte* affidavit of the other party, when perhaps there is, in fact, no foundation whatever for the proceeding. Possession may be required by giving security; but, unless there is some known rule of practice to the contrary, this burden should not be imposed without opportunity to be heard. In a case before the Code, where the objection was that the plaintiff was a nonresident, it was said, that a motion to set aside the attachment for irregularity would

have been the best mode of raising the question. (Downes agt. Phœnix Bank of Charleston, 6 *Hill*, 298, BRONSON, J. And see *Code*, § 324; Blake agt. Losy, 6 *How.* 108; Lindsay agt. Sherman, 5 *id.* 308; *Chitt. Gen. Pr.* 33.) And I see no question of jurisdiction or practice in the way of this course. The court would not try the merits of the action upon conflicting affidavits; nor should the attachment be set aside for every irregularity. The motion should be disposed of as in other cases of erroneous practice. Where the proceedings are in good faith, and the ground on which the attachment was issued actually existed, and the blunder is not gross, I see no objection to amending the proceedings on terms, taking care that the defendant shall not be prejudiced in any manner as to security, &c.

But the point most strenuously contested on this motion is, that the plaintiffs and defendant being nonresidents, and the bill of exchange made and accepted out of the state, this suit can not be maintained here.

I suppose it will not be doubted, that the plaintiffs have the same right to sue here, as any other nonresident, if the nature of the claim is such as should be enforced by a corporation. That right has been settled a long time, both in law and equity, (Henriques agt. Dutch West India Company, 2 *Ld. Raymond*, 1532; Silver Lake Bank agt. North, 4 *Johns. C. R.* 370; 6 *Cow.* 46; 4 *Barb.* 127; 1 *Dan. Pr.* 28; 19 *Wend.* 10,) and has finally been recognized by our statute. (2 *R. S.* 457, § 1.) And, as to suits against a foreign corporation, except § 427, the provisions of the Code, and those of the revised statutes as amended, make no distinction between a resident and a nonresident plaintiff.

But it is said the defendant must be considered nonresident; and it appearing not only by the oirginal affidavit, but by those used on this motion, that the cause of action did not arise within this state, no suit can be maintained thereon; and consequently the attachment should be discharged.

We have seen that a suit may be commenced under the revised statutes where the contract is made, executed, or delivered here, or the cause of action arose here; and by § 427 of

the Code, if the plaintiff is a nonresident, when the cause of action arose, or the subject matter of the action is situated within this state.    The subject matter of the action in this case is not situated in this state.    The property of a nonresident defendant here, out of which a creditor seeks to compel payment of a general debt, is not the subject of the suit to recover the debt.

If the subsequent amendment of §§ 134, 5, limiting the service of summons to cases, where the cause of action arose in this state, or the defendants had property here, is to be considered as modifying § 427, then a foreign corporation may be sued, whenever it has property here.    It is shown that the defendant had not only forty thousand dollars in value of personal property within this state, but claims to own and run about forty miles of railroad here.    But that fact was not made to appear in the original affidavit; and the plaintiffs should make a strong case of mistake to warrant them in now changing the whole ground upon which their attachment issued. Indeed, the counsel for the plaintiffs does not put the case upon that ground, but insists that the cause of action arose here. If it did, the defendant can be sued here under all our statutes on the subject.

It seems to me well settled, that where a contract is made at one place, and is to be performed at another, the contract as to its validity, nature, obligation, and interpretation, is to be governed by the law of the place of performance.    (*Stor. Conf. L.*, §§ 280–1, *and notes;* Burckle agt. Eckhart, 3 *Comst.* 132; Andrew agt. Pond, 13 *Pet.* 778; Fanning agt. Consequa, 17 *John. R.* 511; 4 *Cow.* 410, *note ;* 1 *W. Bl. R.* 259; 2 *Kent.* 460, 393.)    And the rule seems to be the same with regard to bills of exchange and promissory notes. (*Story on Bills,* §§ 131, 129, 145; Cooper agt. E. of Waldegrave, 2 *Beav.* 282.)

There has been some contrariety of opinion as to the contract of an endorser; and the law in relation to fixing him as such. (*Stor. on Bills,* §§ 142, 176, 296 ; Aymar agt. Sheldon, 12 *Wend.* 439 ; Rothschild agt. Carrie, 1 *Q. B.* 43; Cooper agt. Earl of Waldegrave, 2 *Beav.* 285.)    But this bill of exchange may be

considered as drawn upon, and in favor of, and accepted and endorsed by the defendant. The endorsee can sue the Rutland and Washington Railroad Company as acceptor; or as maker of a promissory note. (*Chitt. on Bills*, 24; Meiller agt. Thompson, 3 *M. and G.* 576; *Story on Bills*, § 35, *and note*.) Consequently the defendant became the principal debtor, and no demand at the Exchange Bank in New-York was necessary before suit. (*Stor. on Bills*, § 356; Fodin agt. Sharp, 4 *John.* 183; Wolcott agt. Van Santvoord, 17 *id.* 248; Wallace agt. McConnell, 13 *Pet. R.* 136; Green agt. Goings, 7 *Barb.* 652.) And perhaps Wilde agt. Sheridan, (11 *Eng.* 380,) was put on that ground. But still, that was strictly the place of performance; and if the company had had funds there to pay the bill, that would have exonerated it from payment of all damages and interest. (*Id.* Halstead agt. Skelton, 5 *Q. B.* 86.)

There has been some difficulty in ascertaining what is meant by the phrase "cause of action arose." Especially when the subject matter of the suit is a bill of exchange. (*Stor. Conf. of Laws*, § 317; Wilde agt. Sheridan, 11 *Eng. R.* 380; Buckley agt. Hamn, 5 *Exch. R.* 43; Lewis agt. Owen, 4 *B. and Ald.* 654; Amner agt. Clark, 2 *C. M. and R.* 468; Hush agt. Long, 4 *Eng. R.* 199.)

The counsel for the defendant contends, that the contract of loan, or the bill of exchange, is the cause of action. An "action, in the ordinary use, is simply a legal demand of one's right." (See *Co. Litt.* 285, *a*; 1 *Bac.* 46; 1 *Toml. Dic.* 28.) The Code (§ 2) has given it a little broader sense, perhaps, as suits in equity are now included. "Cause of action," I do not think, is, now at least, synonymous with "chose in action," for the latter phrase, as now used, includes debts, &c., not due; and indeed stocks; (Ld. Thurlow, 1 *Ves. Jr.* 198: and see Gillet agt. Fairchild, 4 *Den.* 80;) though some of the definitions given to it, as well as its etymology, rather import a present right of action. (4 *Petersd.* 254, *r.*; 1 *Chitt. Gen. Pr.* 99; 1 *Lill. Pr.* 378.)

It has been remarked that, "whatever be the form of action, the breach of duty is substantially the cause of action." (BAY-

President, &c., of Bank of Commerce agt. The Rutland & Washington R. R. Co,

LEY, J. in Hornell agt. Young, 5 *B. and C.* 259; and see Burckle agt. Eckhart, *supra,. S. C.* 3 *Den.* 279; 2 *Saund. R.* 63, *d, n, m;* Batley agt. Faulkner, 3 *B. and Ald.* 288, 448; Collinge agt. Heywood, 9 *A. and E.* 633; 1 *Cr. and M.* 467; 1 *Mod.* 269.) In Cooper agt. E. of Waldegrave, *supra,* where the drawer, who was the payee, and the acceptor, both resided in Paris, and the bills were drawn there payable in London, the M. R., in considering the liability of the acceptor, said, "The nonpayment of the money, when the bill becomes due, is a breach in England of the contract which was to be performed in England." And the same principle governs in the application of the statute of limitations.

The defendant relies upon the case of Western Bank agt. Bank of Columbus. (7 *How. Pr.* 238.) As to the right of a foreign corporation to sue, the attention of the court does not seem to have been called to the amendment of the revised statutes by the act of 1849. And as to the cause of action, that was a loan made in another state by one foreign corporation to another; to secure the payment of which a bill of exchange had been given, drawn by other persons upon a resident of New-York. But the suit was upon the loan. If the right to bring this suit depends upon the cause of action arising in this state, the plaintiffs could not sue the defendant here for a loan of $25,000 made in Boston. But the suit is upon a bill of exchange.

Motion denied.*

* This order, on appeal, was affirmed at the fourth district general term in September, 1854; the court considering that if the defendant was dissatisfied, the question could be raised in a more solemn way on the trial.