# GILMAN v. COUNTY OF CONTRA COSTA.

An order is the judgment or conclusion of the Court or Judge, upon any motion or proceeding, and includes cases where affirmative relief is granted, or relief denied.

An appeal will lie from an order refusing to quash an execution.

At common law, an action did not lie against a county; and this was the law of this State until the eighteenth of May, 1854. The law passed May 1st, 1854, exempting the property of counties from a forced sale under execution, did not affect the obligation of plaintiff's contract with the county, for it was but an affirmance of the common law.

An execution levy upon a county's revenues in the hands of the treasurer, is illegal and void.

APPEAL from the District Court of the Seventh Judicial District, County of Contra Costa.

This is an appeal from an order of the District Court of the Seventh Judicial District, overruling a motion to quash an execution, and discharge a levy. The plaintiff recovered a judgment against the County of Contra Costa, in March, 1856, and in January, 1857, sued out an execution and caused a levy to be made on the court-house, and also on the revenues of the county in the hands of the treasurer.

*Sloan & Hartman* for Appellant.

This is an appeal from an order of the District Court of the Seventh Judicial District, for the County of Contra Costa, overruling the motion of the appellant to quash an execution and discharge the levy.

On the twenty-second of March, 1856, the respondent recovered judgment against the appellant in the sum of twenty thousand four hundred and twenty-seven dollars, with interest at five per centum per month.

After establishing his demand against the county of Contra Costa, the respondent made no application to the county authorities to have the same paid or funded; but on the tenth of January, 1857, sued out execution, which he caused to be levied on the court-house of the county, and also upon the revenues of the county in the hands of the treasurer, consisting of the interest fund, school fund, road fund, general and contingent funds.

The former was advertised for sale in the usual manner; and the latter being seized and locked up, are diverted from their legitimate purposes, thus tending to obstruct and suspend the performance of the ordinary public business of the county.

"The act of May 1st, 1854, was passed after the contract was made with the plaintiff, and *pendente lite*, and does not exempt this property from sale under this execution."

The view here presented can be fully answered without con-

sidering the question, whether it is competent for the Legislature to pass an act exempting any part of a debtor's property from sale on execution, which was by law, subject to seizure and sale at the time the debt was created. At the time when the respondent's demand against the county of Contra Costa originated, not only were the public property and revenues of the county exempt from seizure on execution, but the county itself was not liable to be sued.

By the common law no action lies against a county.

It was not until the act of the eleventh of May, 1854, was passed, that an action could be maintained against a county in this State.

Ten days prior to the approval of that act, and with the view of preventing any misapprehension in reference to the rights of the party suing, the act of the first of May was passed, declaring that the court-house, jail, public buildings, offices, lots or land, belonging to the county, should be exempted from forced sales. Statutes of 1854, pp. 38 and 45.

The act of the first of May, however, was wholly unnecessary. It is only by virtue of express legislation, that either the property of a county, or of its inhabitants, can be taken on execution for the satisfaction of a demand against such county.

A county is but the political division of a State. 1 Black. Com., 113, 117; Constitution of Cal., Art. IV, § 4; Art. VI, §§ 1, 8 and 9; Art. XI, §§ 4, 8, 9 and 13; Art. XII, § 14.

The counties have their own assessors, treasurers, auditors, etc. They have their own revenues for general and special objects. Laws of 1850, ch. 42, § 5, p. 115; ch. 43, §§ 1 and 9, p. 117; p. 153, § 25; p. 138, § 30.

Russell v. The Men of Devon, 2 T. R., 671, was an action against some of the inhabitants of the county of Devon for an injury sustained in consequence of the county bridge being out of repair; but it was held that it could not be maintained.

That seems to have been the first experiment of the kind in the English Courts. In reference to which circumstance, Ashhurst, J., remarked: "It is a strong presumption that that which never has been done, cannot by law be done at all." Both he and Lord Chief Justice Kenyon declared that recourse must be had to the Legislature for that purpose, before such action can be maintained.

Again, in Wilson v. The Commissioners of Huntingdon county, 7 Watts & Serj., 199, it was held that, though, by an express act of the Legislature of Pennsylvania, a county might be sued, yet, that execution of a judgment obtained against the county could be had only in the manner provided for in the statute.

The revenues of the county, like those of the State, consist of various distinct funds, which are by law raised for, and devoted to, certain specific objects.

These are made the subjects of distinct accounts, in the books of the treasurer, and can only be paid out pursuant to orders of appropriation, and upon warrants only drawn by lawful authority. The treasurer cannot otherwise dispose of the funds without subjecting himself to a prosecution for a gross violation of his official duty.

The sheriff can derive no power, from the writ of *fieri facias* to invade the county treasury, and divert the funds from their legitimate objects for the purpose of satisfying some particular demand against the county.

I need only to refer to the case of Hunsacker *v.* Borden, decided by this Court at the July Term, 1855, as an authority directly in point, and as conclusive upon the question in this case.

There can be no question as to the power or authority of the Court, in a case like this, to relieve upon motion.

It is a fundamental principle of the common law, that the Court must possess power over its own process; and will, on application, interfere to prevent abuse; sometimes by quashing the writ, sometimes by ordering a discharge of the levy and a restitution of the property which had been seized.

*Geo. F. & Wm. H. Sharp* for Respondent.

On the twenty-eighth day of October, 1852, the appellants made a contract with respondent to build a bridge.

The respondent fulfilled his contract, and not being paid, sued appellants for the contract price. The suit was severely contested by the appellants, and on the twenty-second of March, 1856, respondent finally recovered a judgment, which was afterwards, in all things, affirmed by this Court.

On the tenth day of January, 1857, respondent sued out an execution, and thereunder the sheriff of Contra Costa county levied upon the public buildings and certain unappropriated moneys of appellants, in the hands of the treasurer.

On the —— day of ——, 1857, appellants moved the District Court " to vacate the levy." That motion was dismissed by the Court, and defendant appealed.

A dismissal of that appeal is asked by respondent, for the reason :

1. That no appeal lies. There was no order made, but only a refusal to make an order.

If appellants desired to present a case in such a shape as to authorize this Court to review it, they should have proceeded by bringing an action.

The refusal to grant an order is not subject to review. Pract. Act, § 336, sub-div. 3; Baker *v.* Rosenthal, 7 Cal. R., June 7, 1857 ; Henley et al. *v.* Hastings, 3 Cal. R., 341; The People *v.* Stillman, 7 Cal. R., 117.

2. The first position assumed by appellants before this Court

is, that the county not being suable when this debt was contracted, nor until after the act of May 1, 1854, exempting certain county property, this property was exempt from seizure.

The suability of the county upon this claim is not an open question—it is established by the judgment. This contract being made before the passage of the act allowing counties to be sued, the question of suability was made by appellants both times this case was before this Court on appeal. In fact, at the last time it was the only question seriously urged. This Court did not deem the question of sufficient importance to notice it, and it is presumed that this Court considered the county suable, on this contract, upon common law principles.

Notwithstanding those decisions, the learned counsel, now representing the appellants, consider that if the county was not suable, at common law, at the time this contract was made, any law affecting the remedy does not impair the contract. In this light it becomes important to reconsider the question of suability.

The respondent freely concedes that no action lies at common law against a county for any liability growing out of a strict exercise of the right of sovereignty; those rights only that were formerly possessed by counties in England. All the cases cited by appellants are of that character.

Counties in this State are not strictly political local sovereignties, but quasi-corporations, having extended powers for various purposes.

The suability of a county of this State, upon a contract not made while exercising rights of sovereignty, was never brought before this Court, except in this suit.

But the respondent insists that it is now well settled, at common law, that a political corporation is not exempt from any of the responsibilities of a private corporation, or an individual, except only while engaged strictly in the exercise of sovereign powers.

When they step out of those confines and make a contract, a right springs up, and the common law affords an ample remedy. Mayor, etc., of Lyme Regis. v. Henley, 3 Bar. & Adolph, 77; Clark v. The Mayor, etc., of Washington, 12 Wheaton, 40; Hall v. Washington County, 2 Green's Iowa R., 473, in Liv. Law Mag. for '53, 623; Martin v. The Mayor, etc., of Brooklyn, 1 Hill, 545; Western v. Same, 23 Wend., 334; The People v. The Corporation of Albany, 11 Wend., 539; Moodalay v. The East India Co., 1 Bro. Ch., 469.

3. But concede that appellants could not be sued upon their contract, it was, nevertheless, a valid and binding one, and the act of May 1, 1854, impairs it.

The fact that the appellants could not be sued on this contract, did not render its obligations less binding on appellants; nor the

fact that one of the contracting parties was a County or a State even. Dartmouth College v. Woodward, 4 Wheaton Rep., 518.

All "stop" and "exemption" laws impair the obligation of contracts, and are opposed to the true interests of society. They should never be enacted to enable a corporation to deprive the honest mechanic of the reward of his industry. Such laws have never received favor from the Courts.

Laws wholly prospective in their operations can be endured, whatever may be their nature; but, when retroactive, or construed so as to work a retroactive effect, they work an evil but little below a robbery. This case would be a fit illustration of the wickedness of such a law.

The respondent parted with his materials and performed the labor when no exemption law existed, and although not suable, if the opposing counsel's position be correct, the appellants, if disposed to be honest, could have used this property now made exempt, to pay the debt due respondent.

An exemption law must protect both parties. It cannot protect appellants alone, but the respondent also.

This will not be the case if this property be exempt, because it enables appellants to appropriate the respondent's labor and materials, without recompense to him.

It is confidently asserted that no case can be produced of any Court of high authority, that has ever given a retroactive effect to such a law, even though the remedy might have been more ample when the contract was made.

This legislation, then, being subsequent to the making of the contract, by judicial construction, must be held to refer to contracts made after that time, and not to affect past transactions. Quackenbush v. Danks, 1 Denio, 128; Sackett v. Andrass, 5 Hill, 334; Von Schmidt v. Huntington, 1 Cal. R., 65; Mattheson v. Weller, 8 Denio, 52.

The act of May 15, 1854, allowing counties to be sued, only affected this contract by making the remedy more certain.

4. But, the appellants contend, that these funds are exempt, because they are the funds of a county.

This position cannot be sustained upon principle or authority. The only reason assigned by the Courts in the early English cases, why a county with only political powers could not be sued, was because it had no fund or property.

At the present day, when the powers of a county are so enlarged as to enable it to hold real estate, make contracts, etc., the reason fails. Before the passage of the act above referred to, based upon the advancement of the times, this Court held that the property of a municipal corporation was subject to sale under execution. Smith v. Morse et al., 2 Cal. Rep., 525.

The act of May 1, 1854, sets this matter at rest by defining what property of a county is exempt.

This act being a negative statute, the county is excluded from claiming as exempt property, not mentioned in it.

If that act could reach this debt at all, it could not place this fund beyond the reach of this execution, because it specifically specifies what property shall be exempt from forced sale, and this is not included in the exemption. That act, being in derogation of the common law, will not be extended by construction to property not embraced in it; and the Court will look at all the remedial statutes in construing it.

MURRAY, C. J., after stating the facts, delivered the opinion of the Court—BURNETT, J., concurring.

The first question presented is, whether an appeal will lie in such a case ? The three hundred and thirty-sixth section of the Practice Act gives an appeal from " any special order made after judgment."

The question, then, is, what is an order ? It may be defined to be the judgment, or conclusion of the Court, upon any motion or proceeding. It means cases where a Court or Judge grants affirmative relief, and cases where relief is denied. This is apparent from the language of the statute itself, which gives an appeal " from an order refusing to change the place of trial," etc. The counsel for the respondent relies upon the decisions of this Court, in Baker v. Rosenthal, Henley et al. v. Hastings, and The People v. Stillman.

The first case was an appeal from an order refusing to discharge an attachment before final judgment. In the second case, we held that the party should have appealed from the original act complained of, and not an order refusing to vacate it, and in the last case it was held that no appeal lay from an order refusing to change the place of trial, until after final judgment.

The appellants being entitled, then, to their remedy by appeal, it remains to be ascertained whether the Court below correctly refused to quash the execution.

At common law, an action did not lie against a county, and the law was the same in this State until the eleventh of May, 1854, when the Legislature passed a special statute, authorizing counties to sue and be sued. Previously, on the first of May, of the same year, an act had been passed, exempting the property of counties from forced sale upon execution.

The respondent contends that, inasmuch as the debt was contracted before the act of May 1, 1854, it is not affected by the act. In other words, that the act is not retrospective, and if it were, it would be unconstitutional.

The answer to this proposition is, that the act is but an affirmance of the common law. At the date of its passage, the plaintiff had no right, by his contract, to sue the county, take out an

execution, and sell the county buildings; so that the obligation of no contract is impaired, so far as he is concerned.

The levy upon the county revenues, in the hands of the treasurer, was illegal and void. These revenues are authorized by law, and appropriated to distinct purposes, and are not the subject of seizure upon execution.

Judgment reversed.