Ex parte Axtmayer, Petitioner. The People, Appellant.

Appeal from a Decision of one of the Justices of this Court rendered in *Habeas Corpus* Proceedings.

No. 515.—Decided April 22, 1913.

Divorce—Temporary Care of Children—Jurisdiction.—In accordance with section 166 of the Revised Civil Code, a court having jurisdiction of an action for divorce retains its jurisdiction after an appeal is taken from the judgment in order to hear and determine a motion for the provisional care of the children.

Construction of Law—Action Pending.—The words ''during the time the suit is pending,'' used in section 166 of the Revised Civil Code, mean until its final determination on appeal, or until the time for appeal has expired, in accordance with the provisions of section 348 of the Code of Civil Procedure.

Divorce—Temporary Care of Children—Contempt—Appeal—Jurisdiction.—Section 170 of the Revised Civil Code was not repealed by section 295 of the Code of Civil Procedure and an order providing for the provisional care of the children, entered by a district court after rendering judgment in an action for divorce, is not appealable, said court retaining its jurisdiction to enforce the same and to punish for contempt any disobedience thereof.

The facts are stated in the opinion.

*Mr. Charles E. Foote, fiscal,* for The People.

*Mr. E. B. Wilcox* for petitioner.

Mr. Justice del Toro delivered the opinion of the court.

This is an appeal from the decision of one of the associate justices of this court rendered in *habeas corpus* proceedings. The petitioner, Henry Axtmayer, presented his petition on November 8, 1912. The writ was issued and the hearing took place on the 9th, and on the 11th of the same month the decision appealed from was rendered ordering the immediate liberation of the petitioner. The petitioner was discharged immediately and still remains at liberty.

The record contains a statement of the case, which was approved and certified in accordance with the law. From said statement of the case the facts are as follows:

Henry Axtmayer brought an action for divorce against his wife, Dolores Ortiz Axtmayer, in the District Court of San Juan, Section 1. The latter not only answered the complaint, but filed a cross-complaint praying also for a divorce and alleging cruel treatment and grave injuries as the ground therefor.

On June 17, 1912, the defendant moved the court that her son, Herman, who was then in the custody of his father, be placed in her care provisionally.

On the same date the court held that the matter should remain *in statu quo* inasmuch as the case was to be tried very soon, and ordered that two of their children should remain in the custody of the mother and the other child, Herman, in the custody of his father. The court in fact did not decide the question submitted to it.

On September 19, 1912, the trial of the case took place and on the 25th of the same month judgment was rendered dismissing the complaint and sustaining the cross-complaint and decreeing, therefore, that the marriage bond existing between the plaintiff and defendant was dissolved. On September 30 last the plaintiff appealed from said judgment to this court.

On October 12, 1912, the defendant and cross-complainant again moved the court that her son, Herman, be placed provisionally in her custody pending the final decision of the

divorce suit. The plaintiff opposed this and alleged: *First,* that the court had no jurisdiction to rule upon the motion, because its judgment had been appealed from; *second,* that if this was not the case, then it should be understood that the court had decided the question on June 17; *third,* that if the court considered that it could reconsider its former decision, then the plaintiff alleged that there were strong reasons why the care of the child, Herman, should not be left to the defendant, inasmuch as she was living surrounded by circumstances of a nature which would affect the moral welfare of said child.

At the hearing on the motion the plaintiff did not rely on his third ground of objection, but on the first two. On November 4, 1912, the court ruled on the motion as follows:

"In deciding the motion of the defendant in this case praying for the temporary care of the children of the marriage, as named in the judgment entered, and the counter-motion of the plaintiff upon the same point, and referring to the jurisprudence laid down in the cases reported in volumes 143 California, 333, and 60 California, 624, and the provisions of section 170 of the Civil Code, which show that the matter involved in said motions is not affected by the appeal taken from the judgment and that the former order entered concerning the matter by the honorable Judge Rossy may be reconsidered, the court sustained the motion of the defendant and overruled the said counter-motion, ordering, therefore, that the aforesaid children be put under the provisional care of their mother."

From said order of the court an appeal was taken by the plaintiff on November 6, 1912, to this court.

On November 7, 1912, the defendant moved the court for a compliance with the order of November 4 and the court so ordered. The marshal of the court went to the house of the plaintiff and demanded the delivery of the child. The plaintiff refused to deliver him. The court then summoned the plaintiff to appear on November 8 and show cause why he should not be punished for contempt.

The plaintiff thereupon appeared in person and by coun-

sel on the day set, but did not allege any lawful reason for his refusal to comply with the order of the court commanding him to deliver the child. The court sentenced him to 30 days' imprisonment and to pay a fine of $200. For the execution of said judgment the court issued and signed a writ in accordance with the requirements of law.

After the plaintiff was imprisoned he petitioned for the writ of *habeas corpus* to which reference has been made and which was decided in the manner already stated.

In view of all the foregoing, it is concluded that the only question involved in this case is whether the court had jurisdiction to make and enforce the execution of its order of November 4, 1912. If the court had jurisdiction to make and enforce the execution of its order, it also had jurisdiction to punish the plaintiff for contempt for disobeying the same in an open and avowed manner, in which case the decision appealed from should be reversed. If the district court had no such jurisdiction, it had no power to punish the plaintiff for contempt, and in that case the decision appealed from should be affirmed.

"If the command of the peremptory writ of *mandamus* was in all respects such as the Circuit Court had jurisdiction to make, the proceedings for the contempt are not reviewable here. But if the command was in whole or in part beyond the power of the court, the writ, or so much as was in excess of jurisdiction, was void, and the court had no right in law to punish for any contempt of its unauthorized requirements. Such is the settled rule of decision in this court. *Ex parte Lange,* 18 Wall., 163; *Ex parte Parks,* 93 U. S., 18; *Ex parte Siebold,* 100 id.; 371; *Ex parte Virginia,* id., 339." *Ex parte Rowland,* 104 U. S., 612.

We shall examine and decide in the first place as to whether the district court had power to make the order of November 4, 1912, after having rendered judgment in the principal suit and an appeal had been taken from said judgment; and, secondly, whether the district court had power

to order the execution of said order made on November 4 after an appeal had been taken therefrom.

The Civil Code in force in Porto Rico devotes Title V, Book I to divorce. Said title is divided into five chapters. One of these chapters (Chapter III) treats of the provisional measures to which a suit for divorce may give occasion. Among these provisional measures is that contained in section 166, which reads as follows:

"If there are children of the marriage whose provisional custody is claimed by both parties to the marriage, they shall be placed under the custody of the wife, during the time the suit is pending, unless there be strong reasons in the discretion of the district court for depriving the wife of the custody of her children, either wholly or in part."

Then, in accordance with the provisions of the law, the judge who tries a divorce suit has the power to compel the compliance with said provisions of law with respect to the provisional custody of the children during the time the suit is pending.

The meaning of the words *mientras el juicio se sustancie y decida* of the Spanish version, which are equivalent to the words contained in the English version, "during the time the suit is pending," has been settled by the legislators themselves in section 348 of the Code of Civil Procedure, which reads as follows:

"An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied."

Applying the law governing the case, the first question, therefore, should be decided in the affirmative. The action for divorce was still pending and the court could decide, as it did, with regard to the provisional custody of the children of the parties until the suit was finally decided.

Let us now see whether the court was authorized to order,

as it did, the execution of its order after an appeal had been taken therefrom.

Section 170 of the Civil Code, which is the last section of Chapter III, Title V, cited above, reads as follows:

"No appeal shall lie from the decisions of the district court under this chapter and they shall be amended by the said court when the circumstances of the case require it."

But it is contended that section 170, which is included in a code which took effect in the year 1902, was repealed by section 295 of the Code of Civil Procedure, put in force in the year 1904, and which, so far as applicable, reads as follows:

"Section 295. An appeal may be taken  *  *  *:

\*      \*      \*      \*      \*      \*      \*

"3.  *  *  *  from any special order made after final judgment;
\*.  \*  \*."

Can the order of November 4, 1912, be considered as a special order made after the final judgment in the suit had been rendered?

"We have been unable to find in the authorities a satisfactory definition of the term 'special order,' from which, under the statute, an appeal can be taken. Mr. Bouvier says that, a special rule is an order of court in a particular case for a particular purpose. The decisions of California are conflicting on this question. In Gillman v. Contra Costa Co., 8 Cal., 52, 57, 68 Am. Dec., 290, it is said that the term refers to cases where a court or judge grants affirmative relief and cases where relief is denied. It is also held that the order should follow the judgment in the same line of proceedings. This view is sustained in Quincy v. Gambert, 32 Cal., 304. These cases were reviewed in Calderwood v. Peyser, 42 Cal., 110, and overruled. Mr. Justice Wallace said that the order 'of itself' shall be the subject of appeal. Civ. Prac. Act, § 566, provides that every direction of a court or judge, made or entered in writing, and not included in a judgment, is an order; so that a ruling refusing to stay execution is a 'special order,' and appealable. *Clarke* v. *Gonu,* 2 Mont., 538, 539." Words and Phrases Judicially Defined, vol. 7, p. 6585.

Therefore the meaning of the words "order" or "special order" has not been clearly determined by jurisprudence. In this specific case which we are now considering it is doubtful whether the order of November 4, 1912, should be considered as a special order. If we decide this doubt in the negative, it is evident that section 295 of the Code of Civil Procedure does not affect in any manner the provisions of section 170 of the Revised Civil Code; but if we decide it in the affirmative, then the most important question involved in this appeal will be raised, to wit, whether or not section 170 of the Revised Civil Code has been repealed by section 295 of the Code of Civil Procedure.

The attention of the court has not been called to nor have we been able to find any legal provision expressly repealing said section. The only repealing law to which we have been cited is section 295 of the Code of Civil Procedure, cited above, and the final repealing clause contained in section 361 of said code, which reads as follows:

"Section 361. All laws, royal decrees, orders, military orders, acts, or parts of acts, inconsistent or in conflict with this code, are hereby repealed."

"A legislature may express its will in any form—affirmative or negative—that it pleases, so long as it does not transgress constitutional prohibitions. It is under no obligation to use words of express repeal. But the repeal of statutes by implication is not favored by the courts. The presumption is always against the intention to repeal where express terms are not used. To justify the presumption of an intention to repeal one statute by another, either the two statutes must be irreconcilable, or the intent to effect a repeal must be otherwise clearly expressed. It follows that where the intention not to repeal is apparent or manifest from an act there is no room for repeal by implication, or the application of rules regarding implied repeal." 36 Cyc., 1071, and cases cited.

"Where two legislative acts are repugnant to, or in conflict with, each other, the one last passed, being the latest expression of the legislative will, must govern, although it contains no repealing clause. But it is not sufficient to establish such repeal that the subsequent law covers some, or even all, of the cases provided for by the prior statute,

since it may be merely affirmative, or cumulative, or auxiliary. Between the two acts there must be plain, unavoidable, and irreconcilable repugnancy, and even then the old law is repealed by implication only *pro tanto,* to the extent of the repugnancy. If both acts can, by any reasonable construction, be construed together, both will be sustained. Two statutes are not repugnant to each other unless they relate to the same subject. Furthermore it is necessary to the implication of a repeal that the objects of the two statutes be the same. If they are not, both statutes will stand, although they may refer to the same subject." 36 Cyc., 1073, and cases cited.

Applying the foregoing principles to the specific case which we are now considering, we find that although the subject to which section 170 of the substantive civil law and section 295 of the adjective civil law refer is the same, to wit, appeal, the object of the two provisions is evidently different.

When the legislators established the rule contained in section 170 of the Civil Code they had in mind the special nature of the provisional measures to which suits for divorce may give occasion. Said measures may be urgent to such an extent that making them directly appealable with the effect of staying the execution thereof as soon as the appeal has been taken, would be to destroy totally their efficacy.

And this being the case, no idea can be entertained that the legislators intended to destroy their own work after it had been carefully considered and studied, by simply including in the Code of Civil Procedure a general provision relative to appeals. We are of the opinion that both precepts can and should continue completely in force.

We quote section 85 of the Law of Special Legal Proceedings, approved in the year 1905, or one year after the adoption of the Code of Civil Procedure, in order to show that the intention of the Legislature was to leave in force the special proceedings included in the Civil Code, among which may be considered as included those relating to divorce. Said section reads as follows:

"Section 85. This act shall take effect from and after its passage;

and all previous laws in conflict herewith are hereby repealed; but the special proceedings established in the Civil Code, in the Mortgage Law and its Regulations, and in any other law, in so far as not provided for by this act, remain in force."

The contention of the respondent that section 170 of the Civil Code was repealed by section 295 of the Code of Civil Procedure is based principally upon the cases of *Ex parte Queriolo,* 119 Cal., 635, and *Vosburg* v. *Vosburg,* 137 Cal., 493.

The part of section 295 of the Code of Civil Procedure of Porto Rico, which we have been considering, is similar to section 939 of the Code of Civil Procedure of California, but section 170 of the Porto Rican Civil Code has no exact equivalent in the Californian Civil Code. Hence the jurisprudence of California on this particular point is not conclusively applicable in the decision of the question raised.

The Civil Code of California, like that of Porto Rico, treats of all questions pertaining to divorce, and several sections thereof are dedicated to the provisional measures to which the same may give occasion, but nothing is expressly provided therein as to whether a special order made in a suit for divorce concerning the custody of the children is appealable or not, and it is natural that when the Code of Civil Procedure was approved later, establishing a general appeal from special orders entered after final judgment, it was considered that an appeal could be taken from such an order made in a divorce suit with regard to the custody of the children. There was no law in California, as there was in Porto Rico, to be repealed. Only an empty space was to be filled and it was understood to be filled by the provisions of the Code of Civil Procedure.

Nor is there a similarity between the law of California and that of Porto Rico in so far as regards the powers conferred upon the courts with relation to the custody of the children in matters of divorce. Such power is granted to the courts in California even after the judgment deciding the

case has become final. In Porto Rico it is confined to the pendency of the suit.

In view of all the foregoing, the second of the two questions stated for the methodical consideration of the case, to wit, whether the district court was authorized to order the execution of its order of November 4, 1912, should also be decided in the affirmative.

Said order was not appealable under the express provisions of section 170 of the Civil Code which in our opinion is in full force, therefore the appeal taken therefrom could produce no legal effect whatever and consequently could not bar its execution.

As hereinbefore stated, there is no doubt of the fact that the petitioner disobeyed the order of November 4, 1912, and having already arrived at the conclusion that the district court had jurisdiction to make said order and that it was also authorized to order the execution thereof, the decision appealed from, which was rendered on November 11, 1912, deciding the *habeas corpus* petition presented in this case must necessarily be reversed. Therefore, considering that the punishment imposed upon the petitioner is not unlawful he should be remanded to jail and continue therein until the expiration of his sentence or until he is discharged by order of the proper authority.

*Reversed.*

Chief Justice Hernández and Justices Wolf and Aldrey concurred.

Mr. Justice MacLeary did not take part in the decision of this case.