EASTERN UNION COMPANY OF DELAWARE, INC., a corporation of the State of Delaware, *v.* THE MOFFAT TUNNEL IMPROVEMENT DISTRICT, a corporation organized and existing under special act of the State of Colorado.

(*March* 19, 1934.)

LAYTON, C. J., and RODNEY, J., sitting.

*Hugh M. Morris* and *Alexander J. Nichols* for plaintiff.

*Howard Duane* and *Erskine R. Myer* (of Denver, Colorado) for defendant.

*Paul Leahy* (of Ward and Gray) for the garnishee.

Superior Court for New Castle County, No. 56, January Term, 1934.

RODNEY, J., delivering the opinion of the Court:

We are of the opinion that the motions of the defendant should be granted and the attachment dissolved. In view of the announced appellate disposition of the case, our reasons will not be unduly extended, but need only be sufficient to show the basis of our conclusion form the foundation for appellate action.

The sole question to be briefly discussed is the liability to suit of a public corporation—a municipal, or quasi-municipal corporation—in a State other than that of its creation.

The defendant, we think, is a public corporation. It is a geographical subdivision of the State itself; it has no stock or stockholders; and it exercises important attributes of sovereignty such as the levying of assessments and taxes; and its expressed purposes are public.

The identical act creating the present defendant has been considered by the Supreme Court of the United States in *Milheim v. Moffat Tunnel Improvement District*, 262 *U. S.* 710, 43 *S. Ct.* 694, 698, 67 *L. Ed.* 1194. There the Court said:

"We conclude that the purpose for which the tunnel is to be constructed is not private, but public, and such as warrants the exercise by the State of the power of taxation."

The purposes of the defendant being public, we do not propose to consider whether its proper designation is a pub-

lic corporation—a municipal or a quasi-municipal corporation—for the legal principles applicable in this case would be appropriate regardless of the name by which the defendant corporation should be called.

The law seems to be quite well settled that a municipal corporation is liable to suit only in the State of its creation. Many of the authorities are collected in *Parks v. City of Decatur (C. C. A.)*, 138 *F.* 550; *Marshall v. Kansas City,* 95 *Kan.* 548, 148 *P.* 637, *L. R. A.* 1915F, 1025 and *note.* We do not understand that this principle is denied by the plaintiff—on the other hand, it was tacitly admitted—but the plaintiff contends that in the making of the leases and the collection of the rentals for the use of the tunnel, the defendant was not acting in a public or governmental capacity, but exercising a proprietary interest, and as to such matters is liable to suit and can be sued outside of the State of its incorporation. As evidence of the proprietary action of the defendant, the plaintiff relies upon the language of *Moffat Tunnel Improvement District v. Denver and S. L. Rwy. (C. C. A.)*, 45 *F.* (2d) 715, 725. There the Court said:

"We conclude further that in the making of such leases, the District was acting in a proprietary capacity and is subject to the same restrictions as a private individual."

A public or municipal corporation may have governmental functions and at the same time it may have proprietary functions; and at times the line of demarcation between the two may be, and often is, quite shadowy. Functions which are by one Court deemed governmental are by other Courts held to be proprietary. One difference between two functions is that governmental or public functions apply to the State at large and the proprietary or private functions exist for the private benefit of a compact community. A proprietary interest or function has been held to exist where corporate action is to cover and

be binding over a long period of time and so be binding on the successors to those in charge of the public corporation which is ordinarily not true of the exercise of governmental functions. It is possible that this is the basis of the decision in *Moffat Tunnel Improvement District v. Denver S. L. Rwy., supra,* for such seems to be the holding of some of the authorities cited by that Court.

When the supreme authority in a state (the General Assembly) carves out a geographical area, makes it a public corporation, commands and requires that certain things be done in a certain definite way by a designated authority set up in the act, and also requires that leases be made for a stipulated time fixed by the General Assembly and not by the public corporation, there would then seem to be on the part of the public corporation no element of desire or volition to exercise a proprietary function. Whether this element is essential to the existence of the proprietary function need not be determined.

At all events, even though a public or municipal corporation does exercise both governmental and proprietary functions, yet it is still a governmental agency of the State of its incorporation, even though it may be subject within that State to the distinction between the two types of funcions. It may be sued for causes arising out of the exercise of its proprietary functions, but it still, we think, must be sued in that State of which it forms a part of the government unless the State itself has provided for its suit elsewhere, or unless the public or municipal corporation has itself moved the exercise of its proprietary functions outside of the geographical limits theretofore effective. This was the precise holding in *Board of Directors of St. Francis Levee District v. Bodkin,* 108 *Tenn.* 700, 69 *S. W.* 270. To the same effect is *Marshall v. Kansas City,* 95 *Kan.* 548, 148 *P.* 637, *L. R. A.* 1915F, 1025.

In the *Bodkin Case, supra,* the appellant was a public

corporation of the State of Arkansas; the claim of the appellee arose in Arkansas; the appellant maintained a fiscal office and had a bank deposit in Tennessee. The Court held that the public corporation was only liable to be sued in the state of its creation.

In the *Marshall Case, supra,* it was held that although the City of Kansas City, Mo., a municipal corporation of Missouri, had a water plant across the river in the State of Kansas, yet the municipal corporation was not liable to be sued in Kansas for a cause of action arising in Missouri. The Kansas Court again considered this matter in *Baker v. City of Kansas City,* 118 *Kan.* 27, 233 *P.* 1012, 1013, 1015. There the plaintiff was a resident of Kansas and performed his services in Kansas for the municipal corporation of Missouri exercising its proprietary functions in Kansas and the Court distinguished the *Marshall Case* "without detracting from the judgment of the court in the case last cited." The Court said the municipal corporation

"did not bring its sovereignty into this state, but did bring its proprietary business here, and thus placed itself in the same class with other foreign business corporations doing business in this state, and with respect to such business, and especially liabilities arising in this State from the operation of its business here, it may be sued in the courts of this state."

We do not think the mere fact that a corporation of the State of Delaware may be indebted to the defendant could be construed to be the bringing by the defendant of its proprietary business in the State of Delaware.

The only two legal authorities upon which the present attachment could be sustained are *Harman v. City of Ft. Lauderdale,* 134 *Misc.* 133, 234 *N. Y. S.* 196, and *Doyle v. City of Astoria, Or.,* 147 *Misc.* 127, 262 *N. Y. S.* 572, 573. In the latter case the Court said "A foreign municipal corporation under ordinary circumstances will be treated like any other corporation, and the court will take jurisdiction." Upon that hypothesis, the decision may have been correct,

but that legal concept is so fundamentally different from our own that we cannot view the case as an authority. *Doyle v. City of Astoria,* was affirmed without opinion in 238 *App. Div.* 833, 262 *N. Y. S.* 973.

Under the facts of this case, we do not think the defendant liable to suit in the Courts of Delaware unless the statute under which the attachment is made compels such conclusion.

It is true that *Section* 4143 of the *Revised Code of Delaware* 1915, under which this proceeding was instituted, provides, in part, as follows:

"A writ of foreign attachment may be issued out of the Superior Court of this State against any corporation, aggregate or sole, not created by or existing under the laws of this State," etc.

This language is broad and comprehensive, and would include the defendant unless there exists a plain and well recognized principle of public policy which excludes public or municipal corporations from the terms of the act. The statutory classification of the corporations "aggregate or sole" is the old common law classification but the distinction now between public corporations on the one hand and private corporations on the other is well settled. The general word "corporation" is sufficiently broad in itself to include public entities such as municipalities, yet as used in constitutions and statutes it has frequently been held to refer only to private corporations as distinguished from those which are public. Many of the authorities are collected in the well considered case of *Phillips v. Mayor of Baltimore,* 110 *Md.* 431, 72 *A.* 902, 25 *L. R. A.* (*N. S.*) 711.

The attachment must be vacated, the return quashed and the garnishee discharged.

(*February* 25, 1935.)

WOLCOTT, Chancellor, HARRINGTON, RICHARDS and REINHARDT, J. J., sitting.

*Hugh M. Morris, Alexander L. Nichols* and *Dallas S. Townsend* and *Gardner D. Howie,* of counsel on brief, for plaintiff below, plaintiff in error.

*Howard Duane and Erskine R. Myer* (of Denver, Colorado), of counsel on brief, for defendant below, defendant in error.

Supreme Court, No. 7, June Term, 1934.

WOLCOTT, Chancellor, delivering the opinion of the Court:

The defendant is a corporation of the State of Colorado organized under a special act of the Legislature of that State (*Session Laws of Colorado, Ex. Sess.* 1922, *c.* 2, *p.* 88). The act is known as the Moffat Tunnel Act. The act declares that to provide for an avenue of communication by means of a transportation tunnel through the Continental Divide will reduce the barrier which separates the western portion of the State from commercial intercourse with the eastern portions thereof, will facilitate communication during all seasons of the year, will promote the health, comfort, safety, convenience and welfare of the people of the State and will be of special benefit to the property within the boundaries of the improvement district which the act creates. It creates an improvement district to be known as "The Moffat Tunnel Improvement District" and declares the said district to be a body corporate under the laws of Colorado and that "by said name [it] may sue and defend in all actions, suits and proceedings." *Section* 2, *p.* 89.

The district includes all or a portion of nine counties of the State of Colorado and extends in length from Denver on the east of the Divide to a distance on the west of about two hundred and fifty miles. The tunnel which the act authorizes is a tunnel to be used by standard gauge railroads, telegraph and telephone lines, for the transmission of power and the transportation of water, and by automobiles and other vehicles.

The management of the district is committed by the act to a board of five members to be known as "Moffat Tunnel Commission." The original members are required

to be appointed by the Governor to hold office until August 31, 1932. Thereafter the members are to be elected by the adult persons of the district who own real estate lying within the district and have paid a real estate tax during the preceding year.

The board is empowered, on behalf of the district, to construct the contemplated tunnel and to let contracts necessary to that end. It is authorized to borrow money on bonds to defray the expenses of the construction; and to make assessments upon the real estate located in said district whenever in any year such assessments are necessary to supplement the revenues derived from the operation of the tunnel in order to meet interest and retirement requirements of the bonds, to cover the expenses of the board and the costs of maintenance of the tunnel.

The board is authorized to make contracts and leases for the use of the tunnel, with a limitation of life of not more than ninety-nine years and with a further provision that no lease or contract shall grant a monopoly of use. The general power is conferred on the board to operate, maintain and preserve the tunnel, its approaches and all works incidental thereto. Other powers not necessary to be set forth are conferred which are designed to enable the district to function so as to accomplish the purpose of the act.

*Section* 19 of the act (*page* 107) declares that the tunnel, its approaches, etc., shall be owned perpetually by The Moffat Tunnel Improvement District and shall remain forever a public improvement for public transportation and communication, and, after the authorized bonds are fully paid, it shall then be maintained and operated as provided by law. In *Section* 20 the act (*page* 107) is declared to be necessary to secure and preserve the public health, safety, convenience and welfare and for the prevention of loss of

life and property and for the progress of the people of said Improvement District.

1. The defendant has moved to dismiss the writ on two grounds. These are as follows:

■ (a) That as the attachment below was vacated, the service and return quashed and the garnishee discharged, if the plaintiff should succeed in reversing the order entered by the court below, the attachment could not be restored and its lien, if any there was, revived. Therefore, it is said, the question in this court is moot, and the writ of error should not be retained. To this, the plaintiff replies by saying that it was required to give a bond in the court below to indemnify the defendant against all damage by reason of the attachment; and that it is entitled to have this court review the vacating order so that, in case it be determined that it was improperly entered, the plaintiff may be acquitted of its liability on the bond. We are of the opinion that this consideration supplies a sufficient answer to the defendant's motion under this head. *Click v. Sample,* 73 *Ark.* 194, 83 *S. W.* 932; *Harris v. Barrett,* 206 *Ala.* 263, 89 *So.* 717; *Jones v. Stauffer,* 49 *Idaho* 287, 288 *P.* 419; *Massengill v. City of Clovis,* 33 *N. M.* 394, 268 *P.* 786; *Noce v. Noce,* 34 *N. M.* 335, 281 *P.* 460; *Crom v. Frahm,* 33 *Idaho* 314, 193 *P.* 1013.

■ (b) The second ground on which the motion to dismiss is based is that the garnishee has not been joined as a defendant in error. Let the effect upon the garnishee of the order entered below as final and conclusive, until reversed, of its liability to be attached, be what it may (we express no opinion upon it) the question of the plaintiff's liability to the defendant on the attachment bond is one that concerns the plaintiff alone. The garnishee has no possible interest in it. The writ of error, therefore, should be retained notwithstanding the absence of the garnishee

as a party. Whether, the garnishee not being a defendant in the writ of error, a reversal of the court below would, as to it, serve to open anew the question of the liability of the garnishee to be attached as the defendant's debtor under the lease, is a question which we are not now called upon to answer.

The motion to dismiss should be refused.

2. We now turn to a consideration of the substantial question presented by the writ of error. That question is— was the court below justified in entering the order vacating the attachment, quashing the service and return and discharging the garnishee?

The court below rested its decision on one ground, viz., that the defendant is a corporation created by a sister state as a corporation for public improvement and that its character as such protects it from suit in this State.

That the corporation which the Colorado act creates is designed for such purposes and possessed with such powers, including the sovereign one of taxation, that its character is that of a corporation for public improvement organized by the State as an agency to promote and subserve the public needs of a large and substantial portion of its citizenry, can hardly be questioned. *Milheim v. Moffat Tunnel District*, 72 *Colo.* 268, 211 *P.* 649; *Id.*, 262 *U. S.* 710, 43 *S. Ct.* 694, 67 *L. Ed.* 1194. We think that it is to be categorized with municipal corporations. The court below so thought, and the plaintiff does not challenge that view.

But, contends the plaintiff, conceding the nature of the defendant to be as described, it nevertheless is subject to be sued. The act creating it, it is true, so provides. But under what circumstances a corporation of this type may be sued, and, if the circumstances exist which subject it to suit, in what forum it is liable to be sued, are questions

which are not answered by pointing to the literal language of the statute wherein it is provided that the corporation may sue and defend suits.

A municipal corporation, notwithstanding the law of its creation subjects it in terms of broad import to a liability to be sued, cannot be sued on account of acts done or omitted to be done in its governmental capacity. The authorities are uniform in so holding. But where a municipal corporation engages in activities that are proprietary in their nature as distinguished from governmental, it is liable to suit for causes of action arising out of such activities as much so as are individuals and private corporations. In this case we accept the premise on which the plaintiff's whole argument is based, viz., that the defendant in managing the tunnel enterprise which the State of Colorado entrusted to its charge and in the making of the lease under which the rental indebtedness to it accrued, was acting in a proprietary capacity. This premise is supported by *Moffat Tunnel Improvement District v. Denver & Salt Lake Ry. Co.* (*C. C. A.*), 45 *F.* (2*d*) 715.

The record fails to show the nature of the debt for which the plaintiff brought suit—whether it is a debt which the defendant incurred in the course of its governmental activities or one contracted by it in the exercise of its proprietary functions. Counsel for the plaintiff contend that the case should be sent back to the court below for a trial before a jury in order that the character of the plaintiff's claim as one of proprietary origin may be shown. We assume for the purposes of this writ of error that the plaintiff's claim is of that character. Making that assumption in the plaintiff's favor, we nevertheless are of the opinion that the order of the court below should stand unreversed. There is no point to be gained by sending the case back in order that a fact may be shown which, when shown, can be of no avail to the plaintiff.

The character of the plaintiff's claim is then, we assume, such that the defendant is liable to be sued therefor. But may it be sued in Delaware? The court below was of the opinion that it could not.. We agree.

The purpose of the foreign attachment statute is solely to supply a means of process to secure the limited presence before the court of a non-resident defendant through seizure of his property located here, and to the extent of the value .of the seized property to subject the non-resident to a possible satisfaction of the plaintiff's demand. The process provided by the statute cannot be utilized to bring before the court in this limited way an absent defendant where, if the process were that of a summons personally served, the court would refuse to assert its jurisdiction over the defendant. This would seem to be self-evident. The fact, therefore, that the foreign attachment statute (*Revised Code* 1915, § 4143) in general terms provides that the writ may issue against "any corporation, aggregate or sole, not created by or under the laws of this State," cannot have the effect of subjecting a foreign corporation to proceedings under the statute if, on general principles, the court would not entertain jurisdiction over it.

In this case, the foreign corporation is a municipal corporation. Foreign municipal corporations are not exempted from the general language of the statute. But that observation does not conclude the question with which we are concerned; for courts are constantly engaged in reading exceptions into statutes of general application when the excepted cases are adjudged by them not to have been intended to be embraced within the scope of the statute's generality of expression. Numbers of cases of which *Trainer v. Deemer*, 5 *W. W. Harr.* (35 *Del.*) 396, 166 *A.* 657, in the Superior Court of this State, is an example, may be cited which have excepted out of the general language of statutes of limitations the case of a plaintiff who was

kept in ignorance of his right of action by the fraud of the defendant. Municipal corporations are commonly excepted by the courts from the statutes which provide in general terms that the property of a defendant may be seized and sold in execution. In line with this principle the case of *George W. Emory & Co. v. Com'rs of Laurel,* 3 *Penn.* 67, 55 *A.* 1118, in the Superior Court of this State, correctly, we think, holds that a municipal corporation is to be excepted from the general terms of the mechanics' lien statute. Examples may be multiplied. Perhaps the cases which supply the most frequent illustration of the principle that exceptions are to be raised out of statutory language of general import when the courts are convinced that public policy, or statutory history or other compelling considerations demand it, is to be found in those cases which deal with the very type of corporation we are here concerned with. As stated by *Sutherland* in his work on *Construction of Statutes, Vol.* 2, § 601, "municipal corporations, by reason of the purposes for which they are organized, and for which they raise money and possess property, are excepted by implication from various statutes which apply to corporations generally."

Was then the court below right in holding that the defendant, a foreign municipal corporation, though within the literal language of the statute, nevertheless not within the embrace of its application?

The question, we think, is not so much one of jurisdiction over the corporation to the extent of the garnished debt, as one of whether the court should exercise its jurisdiction. There is a distinction to be drawn between jurisdiction and a consent to its exercise. Jurisdiction may exist; but in proper cases, courts in the exercise of their sound discretion may refuse to entertain it. This is no strange doctrine in the law. *Dewitt v. Buchanan,* 54 *Barb.* (*N. Y.*) 31; *Jackson & Sons v. Lumbermen's Mutual Casualty Co.,*

86 *N. H.* 341, 168 *A.* 895; *Universal Adjustment Corp. v. Midland Bank,* 281 *Mass.* 303, 184 *N. E.* 152, 87 *A. L. R.* 1407. A familiar application of the principle is to be found in those cases, of which *Wason v. Buzzell,* 181 *Mass.* 338, 63 *N. E.* 909, is an illustration, where the court has refused to assume jurisdiction of proceedings involving inquiry into the internal affairs of a foreign corporation notwithstanding service is had upon the defendant in the forum of process. In *Alger v. Alger,* 31 *Hun.* 471, and *Delaware, etc., R. Co. v. N. Y., etc., R. Co.,* 12 *Misc.* 230, 33 *N. Y. S.* 1081, the exercise of jurisdiction was refused on principles of comity. The refusal of courts to exercise their jurisdiction in controversies over which their right to do so is unquestioned, where the same controversy has been previously drawn before and is pending in another court of competent jurisdiction, is based likewise upon the principle of comity. See *Sun Life Assurance Co. v. Merritt-Chapman & Scott Co.,* 19 *Del. Ch.* 110, 163 *A.* 649.

In this case then it is entirely proper for the court to consider whether the judicial tribunals of this State ought in the exercise of a sound discretion to exercise jurisdiction over a public improvement corporation created by a sister state to serve a public need in that state and endowed by its creator with a portion of its own sovereign powers. We think that it would be an offense to the principle of comity between the states and productive of mischiefs of a serious and aggravated nature if the practice were to prevail of one state through its courts entertaining suits against agencies created by a sister sovereign to promote and advance its own public welfare, and subjecting those agencies to judgments and such executionary remedies as it might be in the power of the domestic court to enforce. *Board of Directors of St. Francis Levee District v. Bodkin,* 108 *Tenn.* 700, 69 *S. W.* 270; *Marshall v. Kansas City,* 95 *Kan.* 548, 148 *P.* 637, *L. R. A.* 1915*F*, 1025. Authorities to the contrary are *Harman v. City of Ft. Lauderdale,* 134 *Misc.* 133,

234 *N. Y. S.* 196; *Doyle v. City of Astoria, Or.,* 147 *Misc.* 127, 262 *N. Y. S.* 572, affirmed 238 *App. Div.* 833, 262 *N. Y. S.* 973; *National Shawmut Bank of Boston v. City of Waterville, Me.,* 285 *Mass.* 252, 189 *N. E.* 92. These latter authorities, however, appear to us to be too liberal in their treatment of a foreign municipal corporation's creditors and too indifferent to the consideration of comity between the states which in our judgment courts should be meticulous in regarding. It is to be observed that in the New York case of *Van Horn v. Kittitas County,* 28 *Misc.* 333, 59 *N. Y. S.* 883, affirmed 46 *App. Div.* 623, 61 *N. Y. S.* 1150, while the court asserted its jurisdiction over a foreign municipal corporation, it nevertheless dissolved the attachment because the attached funds were funds raised by taxation by the corporation for its public purposes.

The case of *Baker v. City of Kansas City, Mo.,* 118 *Kan.* 27, 233 *P.* 1012, is cited by the plaintiff as overruling *Marshall v. Kansas City, supra.* We do not so understand the case. It is true that in the *Baker Case* the jurisdiction of the court over the City of Kansas City, Mo., was retained. It was, however, due to the peculiar circumstances which were shown and which we need not review. The result of the two Kansas cases is that as a general proposition the courts of one state will not entertain jurisdiction over a foreign municipal corporation, but that if the circumstances are exceptional, the jurisdiction will be exercised. That is but to say that in such cases the sound discretion of the court will determine whether or not the jurisdiction in a given case will be retained.

The instant case was heard on oral testimony by the court, the parties so stipulating. The plaintiff offered nothing to the court in the way of evidence which would justify the court in treating the case other than one with no unusual features such as were found in the case from 118 *Kan., supra.*

3. But there is another aspect of this matter, aside from the foregoing, which appears to us to be conclusive under the facts of the instant case.

A foreign attachment, while it is process to subject the defendant *qua* his property to the court's jurisdiction, is at the same time what, for the want of a better phrase, we may call a levy and seizure *nisi*. If the plaintiff succeeds in proving his case, the defendant's title to the attached property will be appropriated to the plaintiff's satisfaction. In this case then we have the seizure *in limine* of a municipal corporation's property and the prospect, assuming the plaintiff's success in obtaining judgment, of its diversion from the corporation to the plaintiff. That is what the suit seeks.

Does the law permit the property of a public corporation to be seized on execution process?

It is clear from the cases that a public or municipal corporation may operate in a two-fold capacity—one governmental and the other private. Its functions may be governmental, as in the enactment of local legislation, the preservation of peace and good order, etc., etc., or they may be proprietary as in the holding and operating a property for commercial gain. This distinction between its functions is too well settled to call for elaboration, though the borderland between them it must be admitted, is difficult at times of precise delimitation. The distinction is of significance particularly not in connection with the liability of the municipality to be sued, but with its liability to be held responsible. For instance no one would contend that a municipality could be held for its action or inaction in the matter of local legislation. Such a matter touches very plainly that side of its functions which are purely governmental. Conversely, no one would question its liability to be sued to judgment in connection with its operation for profit of an amusement park, for instance, with its equip-

ment of potentially dangerous mechanisms of play and entertainment. Such an enterprise would fall on the proprietary side of its functions. So also is a city subject to be sued on account of matters both of tort and contract arising out of its operation of waterworks and gas and light plants. Such activities as these are often called proprietary in their nature as distinguished from governmental. Hence the city is held to liability for its contracts or its tortious conduct in connection therewith, as much so as are private corporations and individuals.

But does it follow that because a municipality is held to responsibility in connection with liabilities alleged to be based on the proprietary character of its activities, it is also liable to have the property used by it in pursuing those activities seized and sold in satisfaction of a judgment obtained against it?

As a general proposition we answer the question in the negative. The authorities we think are practically without dissent on this, viz., that if the property is being used for public purposes and to satisfy the needs and necessities which the public it serves demands, the property, notwithstanding it is being used in a sense in a proprietary capacity, nevertheless cannot be seized and sold on execution process. The reason is obvious. It is principally that public policy requires that the public which the municipality was created to serve shall not be made to suffer the immediate deprivation of those public benefits which the wresting of the property from the possession of the municipality will incapacitate it from bestowing. The following cases apply the principle of exemption from execution to have been held in a proprietary capacity. *New Orleans v. Louisiana Construction Co.*, 140 *U. S.* 654, 9 *S. Ct.* 223, 32 *L. Ed.* 607 (public quay or levee) ; *New Orleans v. Morris*, 105 *U. S.* 600, 26 *L. Ed.* 1184 (waterworks) ; *Equitable Loan, etc., Co. v. Edwardsville*, 143 *Ala.* 182, 38 *So.* 1016, 111 *Am. St. Rep.*

34 (stock of liquor in a town dispensary) ; *Walden v. Whigham,* 120 *Ga.* 646, 48 *S. E.* 159 (dispensary holding stock of liquor held in conducting public liquor business) ; *Brockenborough v. Charlotte Water Com'rs,* 134 *N. C.* 1, 46 *S. E.* 28 (city waterworks) ; *People v. San Joaquin Valley Agricultural Ass'n,* 151 *Cal.* 797, 91 *P.* 740 (public reclamation district) ; *Foster v. Fowler,* 60 *Pa.* 27 (public water company) ; *San Francisco Sav. Union v. Reclamation District,* 144 *Cal.* 639, 79 *P.* 374 (public reclamation district). *Geo. W. Emory & Co. v. Com'rs of Laurel, supra,* in the Superior Court of this State, is in line with these authorities. Where, however, a municipal corporation in its proprietary capacity holds property which is not useful nor used for a public purpose, it has been held that such property may be seized and sold on execution. 23 *C. J., p.* 356, § 105.

Here, of course, the tunnel was not seized. But its revenue was. The revenues of a municipality are as essential for its continued and efficient functioning as is the possession and undisturbed use by it of its other property. Revenues, therefore, derived by taxation to support the operation of a public corporation are not subject to execution at the suit of creditors. *Vanderpoel v. Mt. Ephraim,* 111 *N. J. Law* 423, 168 *A.* 575, 89 *A. L. R.* 862; *Underhill v. Calhoun,* 63 *Ala.* 216; *Peterkin v. New Orleans,* 2 *Woods,* 100, *Fed. Cas. No.* 11,026; *Faurie v. City Schools (C. C. A.),* 222 *F.* 251; *Finnegan v. Fernandina,* 15 *Fla.* 379, 21 *Am. Rep.* 292; *Egerton v. Third Municipality,* 1 *La. Ann.* 435; *Gilman v. Contra Costa County,* 8 *Cal.* 52, 68 *Am. Dec.* 290; *Piscataway Township v. First Nat. Bank,* 111 *N. J. Law* 412, 168 *A.* 757, 90 *A. L. R.* 423; *M. K. Terry & Co. v. Hyde County,* 33 *Ohio App.* 118, 168 *N. E.* 562; *Moore v. Chattanooga,* 8 *Heisk. (Tenn.)* 850; *Capps v. Citizens' Nat. Bank (Tex. Civ. App.),* 134 *S. W.* 808. In New York where as before shown jurisdiction will be asserted over a foreign municipal corporation, funds raised by taxation and deposited in New York by the corporation to meet interest

on its bonds are exempt from attachment. *Van Horn v. Kittitas County,* 28 *Misc.* 333, 59 *N. Y. S.* 883, affirmed 46 *App. Div.* 623, 61 *N. Y. S.* 1150.

The principle which exempts public revenues from seizure on execution is not confined to revenues which are derived solely from taxes in the strict sense. It is sufficient if the revenues are stamped with a public purpose and need. In *Ellis v. Pratt City,* 111 *Ala.* 629, 20 *So.* 649, 33 *L. R. A.* 264, 56 *Am. St. Rep.* 76, the proceeds of insurance on a public hall and market place, which was exempt from execution, could not be garnished, notwithstanding the building had been re-erected by the city without the issue of the insurance proceeds. In *Klein v. New Orleans,* 99 *U. S.* 149, 25 *L. Ed.* 430, ground rents which were derived from land owned by the city and were used for the governmental functioning of the city, were held to be beyond the reach of execution process. If a municipality rents a part of its park as a barbeque stand, the rental is not subject to garnishment. *Lee v. Fairfield,* 226 *Ala.* 70, 145 *So.* 669.

The doctrine would appear to us to be a strange one that exempted a municipal waterworks or gas plant from execution, but would permit the attachment of the charges due from the consumers. If the exemption is sound in the one case, as it unquestionably is, it is equally sound in the other.

In the instant case, what has been attached is rental for the non-exclusive use of the tunnel. The agreement of lease may as well have been in the form of a license. The term "rental" notwithstanding it smacks of a proprietary landlord, is of no significance. The substantial fact is that the semi-annual payments which the lease calls for, are payments which the public corporation is in need of to service its outstanding bonds and to maintain and operate the public enterprise. The uninterrupted flow of the rentals into the treasury of the corporation is just

as vital for its proper functioning as is the orderly payment of taxes to a city or of meter charges to a city water or gas works for their efficient management. When a levee or drainage district has been created into a public corporation, the assessments necessary for its maintenance are beyond the reach of garnishment process. *State, ex rel. State Land Bank v. Blake (Utah)*, 20 *P.* (2d) 871; *Board of Directors of St. Francis Levee District v. Bodkin Bros.*, 108 *Tenn.* 700, 69 *S. W.* 270. Equally so, in our opinion, are the rentals which are necessary in this case to maintain and operate the public enterprise here involved.

The statute creating this corporation requires it, in the making of leases, to exact as a rental charge from a proposed user of the tunnel a sum which shall be a fair and just proportion of the total necessary for servicing the interest and retirement requirements of the bonds outstanding, plus the cost of maintenance of the tunnel, its approaches and equipment. The rental stipulated by the lease in this case to be paid by the garnishee was fixed on that basis. Of the $172,950 sought to be attached, $6,000 thereof was for cost of maintenance and the balance for bond service.

Certainly as to the $6,000, the attachment would not lie, for if it would the maintenance of this great public work would be seriously interfered with. Neither would the attachment lie as to the balance, for if it did it is very apparent that the credit of the corporation would be most seriously impaired and its future operations thereby greatly disturbed. The principal consideration which induced the court in *Vanderpoel v. Mt. Ephraim*, 111 *N. J. Law* 423, 168 *A.* 575, 89 *A. L. R.* 862, *supra,* to hold the city funds to be exempt from seizure, was the damage that would ensue to the municipality's credit.

In the foregoing we have purposefully disregarded the effect of the prior assignment by the defendant of the at-

tached rental, because we deemed it best that the case should settle the more substantial questions hereinabove discussed.

Both upon the ground upon which the lower court relied as well as upon the further ground that the particular fund sought to be attached is exempt from execution at the suit of the plaintiff, we are of the opinion that the court below committed no error in vacating the attachment, quashing the service and return thereof and discharging the garnishee.