JACOB BLAUSTEIN v. STANDARD OIL COMPANY, a corporation of the State of Indiana.

*(December* 11, 1947.)

SPEAKMAN, J., sitting.

*Clarence A. Southerland, Aaron Finger* and *Caleb S. Layton* (Nathan L. Miller and Karl F. Steinman, both of New York, on the brief) for plaintiff.

*Hugh M. Morris* and *Edwin D. Steel, Jr.,* (Ralph S. Harris, John R. McCullough and Frederick W. P. Lorenzan, all of New York, and S. Samuel Arsht, of Wilmington, on the brief) for defendant under special appearance for defendant.

Superior Court for New Castle County, No. 136, May Term, 1945.

SPEAKMAN, Judge:

The first point presented by the defendant is that Section 4631 of the Revised Code of Delaware 1935, does not authorize a writ of attachment to issue upon a foreign cause of action at the behest of a foreign plaintiff against a foreign corporation not qualified in Delaware, and doing no business in Delaware.

The pertinent paragraph of Section 4631 is as follows: "A writ of foreign attachment may be issued out of the Superior Court of this State against any corporation, aggregate or sole, not created by or existing under the laws of this State, upon affidavit made by the plaintiff or any other credible person, and filed with the Prothonotary of said Court, that the defendant is a corporation not created by, or existing under the laws of this State, and is justly indebted to the said plaintiff in a sum of money, to be specified in said affidavit, and which shall exceed fifty dollars."

The defendant's position with respect to this language is that it is of a most general character and that it does not specifically authorize attachment to issue in an action by a non-resident plaintiff against a foreign corporation, not doing business here, upon an alleged cause of action arising outside of the State. It contends that the decisions both in this State and elsewhere require a construction excluding the present attachment from the ambit of Section 4631. It says it is not unusual for a court to read substantial limitations into a statute which deals only in the most general terms with the subject matter involved, and it directs attention to the language of the Supreme Court of this State, in *Eastern Union Co., v. Moffat Tunnel Imp. Dist.,* 6 *W. W. Harr.* (36 *Del.*) 488, 178 *A.* 864, at page 870, where in addressing itself to Section 4631, the Court said: "* * * courts are constantly engaged in reading exceptions into

statutes of general application when the excepted cases are adjudged by them not to have been intended to be embraced within the scope of the statute's generality of expression."

For the purpose of illustrating the principle of construction relied upon, the defendant cites a previous decision of the Supreme Court in the instant case, *Blaustein v. Standard Oil Co.*, 4 *Terry* (43 *Del.*) 517, 51 *A.* 2d 568, at 571; *Spoturno v. Woods*, 8 *W. W. Harr.* (38 *Del.*) 378, 192 *A.* 689, and *Smith v. Armour & Co.*, 1 *Penn.* 361, 40 *A.* 720.

I understand that the plaintiff does not dispute the soundness of the rule, but that it denies that it has any application to the question under consideration.

The defendant says that in determining the meaning of Section 4631, it is important to consider Section 4608 of the Code of 1935. This section provides: "All corporations doing business in this State, except banks, saving institutions and loan associations, are subject to the operations of the attachment laws of the State of Delaware, as provided in the case of the individuals; but insurance companies shall not be liable to attachment, except only as to moneys due in consequence of the happening of the risk provided for in policy of insurance; and said corporation[s] shall be liable to be summoned as garnishee, for which purpose service of the summons upon the President, Treasurer, Cashier, Paying Clerk, any Director or the registered agent, as provided in other attachment cases, shall be sufficient to render the corporation subject to all the liabilities provided by the aforesaid laws; and the answer of the officers or agents so served with attachment process shall be enforced in the same manner as is now provided by law in cases where an individual is summoned as garnishee."

The plaintiff argues that Section 4608 has nothing to

do with foreign attachment. He claims that it is manifest from the internal content of the Section that it relates alone to execution attachment and has nothing whatsoever to do with foreign attachment.

Section 4631 was passed March 2, 1857, and pubished as a part of Chapter 424, Volume 11, Delaware Laws. The pertinent language of the Section as passed is identical with the language in the Code of 1935. Prior to 1871 there was no law making a corporation liable as garnishee, and no law directing how a corporation might be summoned as garnishee. By Act passed March 23, 1871, Chap. 90, Vol. 14, all corporations chartered by Act of the General Assembly, with certain exceptions, were made subject to the operation of the attachment laws as already provided in the case of individuals, and were made liable to be summoned as garnishees. The provisions of this Act were extended by amendments passed March 26, 1879, Chap. 140, Vol. 16 and April 25, 1889, Chap. 681, Vol. 18, and as amended it was published as section 4120 of the Code of 1915. By Act approved March 20, 1919, Chap. 226, Vol. 30, Section 4120 of the Code of 1915 was repealed, and in lieu thereof the Act which now appears as Section 4608 of the Code of 1935 was substituted. The only difference in language between Section 4120 of the Code of 1915 and Section 4608 of the Code of 1935 is that for the purpose of summoning a corporation as garnishee under 4120 in the Code of 1915 the service is upon the president, treasurer, cashier or paying clerk, while under Section 4608 in the Code of 1935, the service may also be made upon any director or registered agent.

██ I am not prepared at this time to agree with the contention of the plaintiff that Section 4608 relates alone to execution attachments. I believe that is has been resorted to for the purpose of requiring those corporations included within its provisions, when summoned, to answer as gar-

nishees in foreign attachment proceedings. It might also be suggested, without deciding, that under the language of the Section, some of the corporations included therein might be subject to original proceedings in domestic attachments. On the other hand, I am unable to agree with the argument of the defendant. It is the contention of the defendant that Sections 4631 and 4608 are in pari materia and therefore the general language of the phrase "any corporation, aggregate or sole, not created by or existing under the laws of this State," as contained in Section 4631, must yield to the restricted language of the phrase, "All corporations doing business in this State, except banks, saving institutions and loan associations" as contained in Section 4608. Section 4631 was passed in 1857 as a separate and distinct act purporting to deal with the matters included within its context. Section 4608 stems from a later Act, which was passed in 1871, Chap. 90, Vol. 14. The phrase contained in the section, "All corporations doing business in this State, except banks, saving institutions and loan associations" became a part of the Section by an amendatory act in 1889, Chap. 681, Vol. 18. Neither the Act of 1871, nor any of the subsequent amendments to it which culminated in Section 4608 specifically purport to amend, or otherwise affect, the language of Section 4631. The rule is that all consistent statutes which can stand together, though enacted at different dates, relating to the same subject, are treated prospectively and construed together as though they constituted one act. 2 *Suth. Stat. Con.* 443, *DuPont v. Mills*, 9 *W.W. Harr.* (39 *Del.*) 42, 196 *A*, 168, 119 *A.L.R.* 174. The rule is applicable only when the terms of the statute to be construed are ambiguous or its signficance doubtful. 25 *R.C.L.* p. 1060, s. 285, *DuPont v. Mills, supra.* The classes of corporations included within Section 4631 and the Act of 1919, Chap. 226, Vol. 30, of which Section 4608 is a part, are clearly described in unambiguous language; furthermore,

I can see no repugnancy between Section 4631 and the Act of 1919, therefore I do not believe it can be properly said that legislative intent was that the broad and comprehensive description of the corporations referred to in Section 4631 should be subject to the limitations suggested by the defendant, because of any language contained in Section 4608.

The defendant next directs attention to the fact that the legislatures of the several states have enacted statutes requiring foreign corporations doing business in a state to designate an agent upon whom process against the designatory corporation can be served, and that such statutes, even though general in terms, have been construed to authorize service only if the cause arises within the jurisdiction. It says that Section 4631 should be similarly construed to authorize the writ of attachment only when the cause of action arises within the State, especially when the writ is sought by a non-resident. It strongly argues that this construction is compelled by the decision of the Court of Errors and Appeals, in *National Bank of Wilmington & Brandywine v. Furtick*, 2 *Marv.* 35, 42 *A.* 479, 44 *L.R.A.* 115, 96 *Am.St.Rep.* 99. In that case the action was begun by foreign attachment under which the plaintiff, a national corporation, having its place of business in Wilmington, in this State, attempted to garnishee a claim which the defendant had against an insurance company, a corporation of Great Britain. The defendant's claim which was the subject of the garnishee proceeding was against the insurance company for a fire loss suffered by the defendant in South Carolina, covered by a policy issued by the insurance company. The insurance company had qualified to do business in this State under the insurance law of March 24, 1879, as amended by Act passed March 17, 1881, Chap. 347, § 7, Vol. 16, which provided: "That before insurance companies shall be permitted to transact business in this state, they shall file with

the insurance commissioner a certificate of the name * * * of some person or agent, within this state, upon whom service of processes may be made, and all processes against said company, issued out of the courts of this state may then and thereafter be served upon such person or agent so designated." 42 A. 480

The writ of attachment was issued December 15, 1894. From the return of the Sheriff, it appeared that the insurance company was summoned to answer as garnishee by serving the writ upon Ferdinand L. Gilpin, agent of the company, personally. The defendant moved to vacate the attachment. First, because of want of service upon the statutory officer, and Second, because the debt, under the facts, was not the subject of attachment in the State of Delaware. At the time of the issuance and service of the writ, there was no provision in the insurance law for the summoning of a foreign insurance company, to answer as garnishee. The only statute at that time which subjected foreign corporations doing business in this State to garnishee process was the Act of 1889, Chap. 681, Vol. 18, which provided that the "service of the summons upon the president, treasurer, cashier, or paying clerk, as provided in other attachment cases, shall be sufficient to render said officers and the corporation subject to all the liabilities provided by the aforesaid laws." The Court held that Gilpin was not such an officer. The Court also held that the situs of the res was not in this State. For these two reasons, and also for a third reason, as contended by the defendant in the present case, the Court vacated the attachment. This third reason, as stated by the defendant, was that "since the principal defendant could not have sued the garnishee in Delaware by serving with summons a designated agent of the garnishee (due to the fact that the cause of action arose outside of Delaware, and both the principal defendant and garnishee were non-resi-

dents), the plaintiff could not properly attach the claim of the defendant against the garnishee." In referring to the provision in the insurance law, Chap. 347, Vol. 16, the Court said: "The statute provides that, before foreign insurance companies shall be permitted to do business in this state, they must appoint an agent upon whom process may be served. The condition has relation to the permission given. The presumption is that only such jurisdiction is claimed as is necessary to deal with litigation arising out of the business that is done under this permission."

The insurance law, Chap. 347, Vol. 16 contains thirteen sections. In its consideration of the case, it is not unreasonable to assume that the context of the entire Act indicated to the Court that it was solely designed for the benefit and protection of the holders of policies of insurance issued by the qualified insurance companies within this State and also for the protection of its citizens and residents. I am unable to see the pertinency of the Furtick case. When we consider, as I believe we must, that, in a proceeding begun by foreign attachment, the attaching plaintiff stands in no better position than a defendant's creditor who has been summoned as garnishee, in relation to the garnishee's indebtedness, I must agree with the defendant that under the provision of the insurance law of 1881, a foreign insurance company having an agent in this State appointed under the insurance law could not be compelled to respond in a suit commenced by a non-resident by summons upon a foreign cause of action when the process was served upon the statutory agent. In arriving at its conclusion, the Court did not, nor was it necessary for it to consider any of the pertinent provisions of the Act of 1857, § 4631, Code of 1935. The Court was dealing with the question of service of process upon the insurance company under the provisions of the insurance law, and not with the physical taking of property

belonging to an insurance company not used in connection with its business in this State, pursuant to a writ of attachment issued under the Act of 1857, in a case in which the insurance company was named as defendant.

The defendant next argues that even if the provisions of Section 4631 were to be construed independent of those of Section 4608, there is ample authority for holding that the writ of attachment was not properly issued, and in support of this position it strongly stresses the language of the *Supreme Court in Eastern Union Co. v. Moffat Tunnel Imp. Dist.*, 6 *W.W. Harr.* (36 *Del.*) 448, 178 *A.* 864, 870, *supra* where Chancellor Wolcott, speaking for the Court, said: "The process provided by the statute [Section 4143, Code of 1915, now Section 4631, Code of 1935] cannot be utilized to bring before the court in this limited way an absent defendant where, if the process were that of a summons personally served, the court would refuse to assert its jurisdiction over the defendant. This would seem to be self-evident."

This language is authoritative only to the extent of its application to the question then before the Supreme Court. The decision of the Court was that it would decline to assume jurisdiction in a case where for the purpose of compelling an appearance by the defendant, a foreign municipal corporation, a debt due to it was garnished. The Supreme Court, in affirming the lower court based its opinion upon the principle of comity between the states, as it considered it would be an offense productive of a serious and aggravated nature if the practice were to prevail of one state through its courts entertaining suits against agencies of a sister state to promote and advance its own welfare. A principle based upon such a reason can have no application to the present case.

The defendant also relies to a considerable extent on the cases of *Pullman Palace Car Co. v. Harrison*, 122 *Ala.*

149, 25 *So.* 697, 82 *Am.St.Rep.* 68, and *Hodges v. Pennsylvania R. Co.,* 171 *La.* 669, 132 *So.* 115.

In the Pullman case the action was in tort. The question, as stated by the Court [122 *Ala.* 149, 25 *So.* 698], was "Can a foreign corporation's property found in this state be attached and condemned to satisfy a demand growing out of a tort committed by it in another state?" The Court referred to the fact that without legislative enactment, a foreign corporation could not be sued outside of the state of its domicile, because there was no means by which service could be had upon it, and said "To meet and obviate this inconvenience, and oftentimes injustice, the legislature of this state has enacted statutes by which process may be served upon the agents of foreign corporations doing business in this state." As pertinent to the question before the Court, *Railroad Co. v. Carr,* 76 *Ala.* 388, 52 *Am.Rep.* 339, was relied on. There it was held, after a consideration of the statutes and decisions, that a foreign corporation, though doing business in the state, through its agents located there, could not be held liable in its courts for a tort committed in another state, because in the opinion of the Court it was not the intention of the legislature, in any of the statutes, to allow a foreign corporation to be sued in Alabama, except on causes of action originating in that state, or on contracts entered into in reference to a subject matter therein.

If, as was held in the Carr case, no foreign corporation could be held liable in the Alabama Courts for any causes of action, except causes of action originating in the State, or on contracts entered into in reference to a subject matter therein, even though there was service upon the designated agent, it inevitably follows that jurisdiction could not be acquired by attachment, in the absence of express legislative authority. To meet the ruling in the Pullman case, §5681 of the Code of Alabama, 1923, Code 1940; Tit. 7, § 97, was pass-

ed, giving to the Alabama Courts jurisdiction, both in contract and in tort, of causes of action arising both against persons and corporations in other states. See *Louisville & N. R. Co., v. Deutsche, & Co. Dist. Ct. S. D. Ala.*, 43 *F.* 2*d* 651.

In the Hodges case the plaintiffs' action was against a non-resident corporation to recover damages for a tort committed outside of the State. The action was grounded on Act La.No. 215 of 1920, authorizing writs of attachment in suits against non-resident corporations for damages arising from offenses, quasi offenses and tort. The Court held that this Act must be construed in connection with the provisions of Act La.No. 184 of 1924, limiting the jurisdiction of the State Courts over non-resident corporations having an agent or doing business within the State to cases of liability growing out of or connected with business done by the corporation in the State. The Court's opinion was based upon the reasoning that since the laws of the State did not permit a suit of the character under review to be brought against a non-resident corporation admitted to do business and owning property within the State, it would be illogical to hold that they do permit such a suit to be brought against a non-resident corporation not admitted to do business within the State, merely because it temporarily had some property in the State. This case is not helpful, as the Court's reasoning is directly contrary to the decision of this Court in *Albright v. United Clay Production Co.*, 5 *Penn.* 198, 62 *A.* 726, where it was held that a foreign corporation was subject to foreign attachment process notwithstanding that it had complied with our law relating to foreign corporations and had appointed an agent upon whom process could be served.

The language of Section 4631 is plain and unambiguous. There is nothing in the context to signify that its provisions are to be given any limited or special meaning. Its provisions

are broad and sweeping. Under its provisions there are four requisites for jurisdiction, (1) a plaintiff, (2) a cause of action, (3) a res, and (4) a defendant.

In this case the plaintiff is not a citizen of this State. Under the facts in the case, the defendant apparently questions the availability of the process to the plaintiff because of that fact. The parties are not in accord as to whether a state can constitutionally deny a plaintiff the use of its courts on the ground that the plaintiff is not a citizen of the State. The plaintiff relies, among others, on the two Delaware cases of *Swift v. Richardson*, 7 *Houst.* 338, 6 *A.* 856, 32 *A.* 143, 40 *Am.St.Rep.* 127, in our former Court of Errors and Appeals, and *Johnstone v. Kelly*, 7 *Penn.* 119, 74 *A.* 1099, before Judge Spruance, sitting for the purpose of investigating the allegations in an affidavit filed by the defendant, on which, at the suit of a citizen of another state a writ of attachment was issued by a Justice of the Peace. It was held in both cases that a state statute denying to a citizen of another state a remedy given to a citizen of this State, would be void under § 2, art. IV of the Constitution of the United States. On the other hand, the defendant says that the privileges and immunities clause of the Constitution does not require a state to open its courts to residents and non-residents alike upon foreign causes of action, in support of which it cites a number of Federal cases, including *Douglas v. New York N. H. & H. R. Co.*, 279 *U.S.* 377, 49 *S.Ct.* 355, 356, 73 *L.Ed.* 741, from which it quotes the language of Mr. Justice Holmes that "There are manifest reasons for preferring residents in access to often overcrowded Courts, both in convenience and in the fact that broadly speaking it is they who pay for maintaining the Courts concerned." I do not believe, however, that the particular constitutional provision has any direct application to the question in this case. It is inconceivable to believe that the right of a citizen

of a foreign state to proceed under Section 4631 against a foreign corporation is not identical with his right to proceed under Section 4630 of the 1935 Code, § 4142, Code of 1915, against a non-resident individual. Section 4630 reads, in part, as follows: "A writ of foreign attachment may be issued against any person not an inhabitant of the State * * * upon affidavit made by the plaintiff, or some other credible person, and filed with the prothonotary, that the defendant resides out of the State, and is justly indebted to the said plaintiff in the sum exceeding fifty dollars. * * *."

In *Ownbey v. Morgan*, 256 *U.S.* 94, 41 *S.Ct.* 433, 437, 65 *L.Ed.* 837, 17 *A.L.R.* 873, *supra,* the question of the constitutionality of this Section was before the Supreme Court of the United States upon a writ of error to the Supreme Court of this State which brought before the Supreme Court of the United States for review a judgment entered by this Superior Court in a foreign attachment proceeding brought by a citizen of another state, upon a transitory cause of action in contract, in which shares of stock in a Delaware corporation were attached. In its opinion the Supreme Court of the United States said: "In *Pennoyer v. Neff*, 95 *U.S.* 714, 722-724, 24 *L. Ed.* 565, it was shown that the process of foreign attachment has its fundamental basis in the exclusive jurisdiction and sovereignty of each state over persons and property within its borders; and although emphasis was there laid upon the authority and duty of a state to protect its own citizens in their claims against non-resident owners of property situate within the state, it is clear that, by virtue of the 'privileges and immunities' clause of section 2 of article 4 of the Constitution, each state is at liberty, if not under a duty, to accord the same privilege of protection to creditors who are citizens of other states that it accords to its own citizens. *Blake v. McClung*, 172 *U.S.* 239, 248, *et Seq.*, 19 *S.Ct.* 165, 43 *L.Ed.* 432."

In the Ownbey case, the Supreme Court of the United States clearly indicated, in its opinion, that the language of Section 4630 accorded the same privileges and protection to creditors who are citizens of other states that it accorded to our own citizens. In accord with this view, a comparison of the language of Section 4630 with that of Section 4631 would compel the conclusion that our courts are likewise open to citizens of foreign states under Section 4631. I think I can safely say that in every instance where the right has been given by statute of this State in unrestricted language, as is the case in Section 4631, to institute proceedings in our law courts, it has been the universal view of both the bench and bar, for many years, that the citizens of this and other states were entitled to that right without discrimination, except as to security for costs by non-residents. A construction of statutes that have been so viewed for many years should not be disregarded.

The form of the plaintiffs' action and the character of the res present no difficulty. The action is in covenant. It is a transitory action which belongs to the class of actions of which this Court has cognizance, consequently there can be no question as to the right of the plaintiff, by reason of the form of action, to proceed by foreign attachment, because as was held by the Supreme Court in construing Section 4631, under its provisions "there now exists no policy which militates against utilizing foreign attachment process in all contract actions." *Blaustein v. Standard Oil Co.*, *Del.Sup.*, 49 A.2d 726, 736, *supra*. The shares of stock taken under the attachment are in a Delaware corporation. Under Section 92, § 2124, Code of 1935, of the General Corporation Law of this State, shares of stock in a Delaware corporation are placed in the category of property that is attachable, and, by Section 73, § 2105, Code of 1935, thereof, the situs

of such shares of stock is in this State for the purpose stated in Section 92.

The primary contention of the defendant is that Section 4631, standing alone, is not sufficiently explicit in its terms to overcome the presumption that the process authorized against foreign corporations is confined to litigation arising out of business done in this State, and that the Section is therefore wholly inadequate to encompass the proceedings at bar.

"The purpose of the process of foreign attachment is to acquire jurisdiction of a defendant who does not reside within the jurisdiction of the court, by taking his property within the jurisdiction and thereby compelling his appearance to the suit of his creditor." *Woolley on Del.Pr.* § 1270. "The absence of a resident from the jurisdiction, or the presence of a non-resident within the jurisdiction, does not affect or control the application of the principle governing the process of foreign attachment * * *. The characteristic of non-residence in the process of foreign attachment applies to corporations as well as to individuals." *Woolley on Del.Pr.*, § 1274.

The only reported case in which our Courts have read an exception into the phrase, "a corporation not created by, or existing under the laws of this State", contained in Section 4631, is *Eastern Union Co. v. Moffat Tunnel Imp. Dist.*, 6 *W. W. Harr.* (36 *Del.*) 488, 178 *A.* 864, 865, (affirmed at 495 et seq.), *supra*, where this Court said, "The law seems to be quite well settled that a municipal corporation is liable to suit only in the State of its creation." This being so, it necessarily follows that a municipal corporation would neither be amenable to process or have the capacity to stand in judgment in a foreign jurisdiction. Because of this it is evident that it would be beyond the power of a creditor,

whether a citizen of this or another state, to properly bring a suit in this State by foreign attachment under Section 4631, against a foreign municipal corporation, upon a cause of action arising either within or without the State. Even in the event of such a suit, being coerced by reason of the attachment of its property, the municipal corporation appeared, the probable resulting consequence would be the quashing of the process and the dissolution of the attachment. But it is otherwise with respect to the defendant in this case. It has the capacity to be sued in any state, and it and its property is amenable to all legal process, wherever issued, against it, when legal service is had.

The jurisdiction of the Delaware Courts is co-extensive with its sovereignty, and that embraces the persons and things within its territorial limits. The question in this case in no way involves the jurisdiction of this Court to enter a judgment in personam against the defendant corporation. It cannot be compelled to respond to the process issued in the case. The judgment under attack is a judgment nisi in rem, in which the judgment can only bind the property seized under the writ. *Ownbey v. Morgan,* 256 *U.S.* 94, 41 *S. Ct.* 433, 65 *L. Ed.* 837, 17 *L.R.A.* 873. It is unquestionably true that the property of a citizen or resident of a foreign state, within the limits of Delaware, is subject to the exclusive jurisdiction of our courts, and this is fundamentally the basis for a proceeding in foreign attachment. *McLaughlin v. Bahre,* 5 *W. W. Harr.* (35 *Del.*) 446, 166 *A.* 800; *Ownbey v. Morgan, supra; Pennoyer v. Neff,* 95 *U.S.* 714, 24 *L. Ed.* 565; *Dorr v. Gibboney, et al., C.C.,* 7 *Fed. Cas.* 923, Case No. 4,006. The thing belonging to the absent defendant is seized and applied to the satisfaction of his obligation. The Federal Constitution presents no obstacle to the full exercise of this power. The only essentials to the exercise of the State's power are presence

of the res within its borders, its seizure at the commencement of proceedings, and the opportunity of the owner to be heard. *Pennington v. Fourth Nat. Bank*, 243 *U.S.* 269, 37 *S. Ct.* 282, 61 *L. Ed.* 713, *L.R.A.* 1917*F*, 1159; *McLaughlin v. Bahre, supra.*

■ My conclusion is that Section 4631 authorized the issuance of the writ of foreign attachment in this case under the facts of the case.

■ The next point presented by the defendant is that if Section 4631 should be construed to authorize the attachment here made, it unreasonably obstructs and unduly burdens interstate commerce, and is to that extent void by virtue of violating the Interstate Commerce Clause of Article I, Section 8 of the United States Constitution.

The commerce clause, Art. I, Sec. 8, of the United States Constitution provides: "The Congress shall have Power * * * to regulate Commerce with foreign Nations, and among the several States."

The defendant calls attention to the fact that by virtue of this delegation of authority to the Federal Government, it has been held under a variety of circumstances that the several states may not, by direct regulation, taxation, or otherwise, unduly obstruct or burden commerce among the several states, for which it cites *Western Union Tel. Co., v. Kansas*, 216 *U. S.* 1, 30 *S. Ct.* 190, 54 *L. Ed.* 355; *International Textbook Co., v. Pigg*, 217 *U.S.* 91, 111, 30 *S. Ct.* 481, 54 *L. Ed.* 678, 27 *L.R.A.* (*N.S.*) 493, 18 *Ann. Cas.* 1103; *Buck Stove Co., v. Vickers*, 226 *U.S.* 205, 216, 33 *S. Ct.* 41, 57 *L. Ed.* 189; *Adams Mfg. Co., v. Storen*, 304 *U.S.* 307, 58 *S. Ct.* 913, 82 *L. Ed.* 1365, 117 *A.L.R.* 429; *Best & Co. v. Maxwell*, 311 *U.S.* 454, 61 *S. Ct.* 334, 85 *L. Ed.* 275.

It says that this principle has been applied specifically

to efforts by states to exercise jurisdiction over the trial of causes of action arising in other states against foreign corporations engaged directly in interstate commerce. It refers to the cases of *Davis v. Farmers Co-op. Co.*, 262 *U.S.* 312, 43 *S. Ct.* 556, 67 *L. Ed.* 996; *Atchison, T. & S. F. R. Co. v. Wells*, 265 *U.S.* 101, 44 *S. Ct.* 469, 68 *L. Ed.* 928; *Michigan Cent., v. Mix,* 278 *U.S.* 492, 49 *S. Ct.* 207, 73 *L. Ed.* 470, and *Denver & R. G. W. R. Co., v. Terte*, 284 *U.S.* 284, 52 *S. Ct.* 152, 76 *L. Ed.* 295. It says that in each of those cases the Supreme Court of the United States held that a state might not exercise jurisdiction to try claims of a non-resident against a foreign corporation engaged in the business of interstate transportation where the cause of action did not arise within the state seeking to exercise the jurisdiction.

In the Davis case the original action was brought in Minnesota by Farmers Co-operative Company, a Kansas corporation, against James C. Davis, Director General of Railroads, as agent for the Atchison, Topeka & Santa Fe Railway Company, another Kansas corporation engaged in interstate transportation for hire. The Railway Company had an agent for the solicitation of freight and passenger traffic in Minnesota, and service of process was made upon the agent, pursuant to a Minnesota statute which provided: "Any foreign corporation having an agent in this state for the solicitation of freight and passenger traffic or either thereof over its lines outside of this state, may be served with summons by delivering a copy thereof to such agent." M.S.A. § 543.08.

Whether this statute, as construed and applied, violates the Federal Constitution, was the only question for decision. In the action recovery of damages was sought for loss of grain shipped under a bill of lading issued by the Railway Company, for transportation over its lines between points

in Kansas. A motion was made to dismiss the action on the ground that it violated the equal protection clauses of the Fourteenth Amendment, as well as the commerce clause in the Federal Constitution. The motion to dismiss was denied. Upon writ of error to the Supreme Court of the United States, the order of dismissal was reversed. In its opinion the Supreme Court considered the fact that claims against interstate carriers for personal injuries and for loss and damage of freight are numerous; that the amounts demanded are large; that in many cases carriers deem it imperative, or advisable, to leave the determination of their liability to the courts, that litigation in states and jurisdictions remote from that in which the cause of action arose entails absence of employees from their customary occupations, and that this impairs efficiency in operation, and causes, directly and indirectly, heavy expenses to the carriers, and that these are matters of common knowledge. The defendant quotes from the opinion of the Supreme Court in holding the Minnesota statute unconstitutional, the following [262 U.S. 312, 43 S. Ct. 558]: "The fact that the business carried on by a corporation is entirely interstate in character does not render the corporation immune from the ordinary process of the courts of a state. * * * It may be that a statute like that here assailed would be valid, although applied to suits in which the cause of action arose elsewhere, if the transaction out of which it arose had been entered upon within the state, or if the plaintiff was, when it arose, a resident of the state. These questions are not before us, and we express no opinion upon them. But orderly effective administration of justice clearly does not require that a foreign carrier shall submit to a suit in a state in which the cause of action did not arise, in which the transaction giving rise to it was not entered upon, in which the carrier neither owns nor operates a railroad, and in which the plaintiff does not reside. The public and

the carriers are alike interested in maintaining adequate, uninterrupted transportation service at reasonable cost. * * * Avoidance of waste, in interstate transportation, as well as maintenance of service, has become a direct concern of the public. With these ends the Minnesota statute, as here applied, unduly interferes. By requiring from interstate carriers, general submission to suit, it unreasonably obstructs, and unduly burdens, interstate commerce."

In the Wells, Terte and Mix cases the Courts recognized and applied the principle laid down in the Davis case. Each case involved situations in which the defendant corporation was an interstate carrier for hire.

The defendant also refers to and quotes from articles by authors appearing in 27 Columbia L. Rev. 12 and 33 Illinois L. Rev. 875-882. In the article in the Columbia Law Review the writer expresses the opinion that interstate railroads are no more harassed by such suits, as in the Davis case, than interstate insurance companies, interstate mercantile firms, or companies doing any other kind of business in several states, and he says that Justice Brandeis' argument in the Davis case would apply equally well to any other interstate commercial enterprise. A similar view was expressed by the author in the article in the Illinois Law Review. These articles merely express the views of the writers. My attention has not been directed to any Federal or other cases in which any similar view was expressed.

The language of Professor Beale, in his treatise on Conflict of Laws, to which the defendant directs attention, that "A state statute providing for service of process upon an agent of a foreign corporation doing business in the state, so far as it applies to a corporation engaged in interstate commerce, and to a cause of action not connected with the business carried on within the state is unconsti-

tutional as involving an interference with interstate commerce," as an authority, goes no farther than the supporting cases, which are *Davis v. Farmers Co-op Co.*, 262 *U.S.* 312, 43 *S. Ct.* 556, 67 *L. Ed.* 996, *supra,* and *Sioux Remedy Co. v. Cope,* 235 *U.S.* 197, 35 *S. Ct.* 57, 59 *L. Ed.* 193. In the Davis case, as already stated, the foreign corporation was engaged in the business of interstate transportation for hire. The Cope case, and also the cited cases of *Dahnke-Walker Milling Co., v. Bondurant,* 257 *U.S.* 282, 42 *S. Ct.* 106, 66 *L. Ed.* 239, and *Furst v. Brewster,* 282 *U.S.* 493, 51 *S. Ct.* 295, 75 *L. Ed.* 478, involved actions to recover for goods sold and shipped in interstate commerce, in which the defendants sought to avoid liability by showing noncompliance with the state statutes which conditioned the right of the foreign corporations to sue in such case upon its registration under the state statute. In this case it appears that the defendant's transportation business is directly connected with its own operations. It is nowhere shown that any of its activities include those of a public carrier for hire. Upon this showing it seeks to have the principle applied to the case which underlies the decision in the Davis case. This principle is that "The public and the carriers are alike interested in maintaining adequate, uninterrupted transportation services at reasonable cost." In the Davis case the Court said "This common interest is emphasized by Transportation Act 1920, which authorizes rate increases necessary to ensure to carriers efficiently operated a fair return on property devoted to the public use." The defendant, in seeking the application of the principle to this case, strongly stresses its large interstate business throughout the mid-west, and contends that the present litigation would be particularly burdensome to it, as well as to the Courts and taxpayers of this State. I can conceive of no good reason why the extent of the business of a defendant, or the burden on the courts or

the state, should be decisive on a question of jurisdiction. My attention has not been directed to any case in point on facts analogous to those in the present case. This is a strong indication to me that the extent and effect of the principle is limited to interstate carriers for hire, and I believe it is so limited, and for that reason it will not be applied in this case.

The last point presented is that if 4631 should be construed to authorize the attachment here made, it deprives defendant of property without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States.

In its reply brief the defendant has restated briefly its position on its point.

It states first, that to require a foreign corporation which does no business in the state to defend a foreign cause of action "away from its home or other jurisdiction where it carries on more substantial activities has been thought to lay too great and unreasonable a burden on the corporation to comport with due process" and for this it cites *International Shoe Co. v. Washington*, 326 *U.S.* 310, 317, 66 *S. Ct.* 154, 161 *A.L.R.* 1057, 90 *L. Ed.* 95, and *Riverside Mills v. Menefee*, 237 *U.S.* 189, 194, 195, 35 *S. Ct.* 579, 59 *L. Ed.* 910, each of which was begun by summons. It should be noticed that in the Menefee case the corporation had no property in the foreign state.

For authority in support of this proposition it is not necessary to go outside of our own State. In *Atlas Mut. Ben. Ass'n, v. Portscheller*, 4 *Terry* 298, 46 *A. 2d* 643, the Supreme Court held that a foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business in such manner and to such extent as to warrant the inference that it is

present there, and said there must be some continuity of business activity on the part of the corporation in the state of the forum, "enough to demand a trial away from its home."

It states next, that the implied consent of a corporation to be sued by reason of doing business within a state without the appointment of a statutory agent, permits the corporation to be sued only upon causes of action arising in the forum, and it cites *Simon v. Southern Ry.*, 236 *U.S.* 115, 35 *S. Ct.* 255, 59 *L. Ed.* 492. In this case the Court recognized the right of every state to provide for service of process upon any foreign corporation doing business therein; to require such companies to name agents upon whom service can be made, and to provide that in case of the company's failure to appoint such agent, service, in proper cases, may be made upon an officer designated by law, but as stated by the Court, this power to designate by statute the officer upon whom service in suits against foreign corporations may be made relates to business and transactions within the jurisdiction of the state enacting the law. In this case the principle laid down in *Old Wayne Life Ass'n, v. McDonough*, 204 *U.S.* 8, 27 *S. Ct.* 236, 51 *L. Ed.* 345, that the statutory consent of a foreign corporation to be sued does not extend to causes of action arising in other states, was followed.

With the above two statements as a premise, the defendant states finally that the implied consent to be sued evidenced by ownership of shares of stock in a Delaware corporation is no greater than the implied consent to be sued resulting from doing business in a state without qualifying therein, and accordingly, the process of foreign attachment cannot be used against a non-qualified foreign corporation in order to institute an action upon a foreign cause of action.

If it is to be inferred that a consent to be sued

is to be implied by reason of the mere ownership of stock in a Delaware corporation, that inference can only be based upon the presumption that property in this State belonging to absent owners is in the care and management of persons who represent the absentee, who will communicate with the owners information about any proceedings taken in relation to the property. As stated above, the fundamental basis of foreign attachment is the exclusive jurisdiction and sovereignty of each state over the persons and property within its borders. *McLaughlin v. Bahre*, 5 *W. W. Harr.* (35 *Del.*) 446, 166 *A.* 800, I can see no analogy between an implied consent to be sued in personam resulting from doing business in a state without qualifying, and a proceeding quasi in rem where the res is within the exclusive jurisdiction of the state. In *Ownbey v. Morgan*, 256 *U.S.* 94, 41 *S. Ct.* 433, 437, 65 *L. Ed.* 837, 17 *A.L.R.* 873, *supra,* it was said: "The courts of Delaware at all times have laid emphasis upon the difference between the original character of a suit by foreign attachment, treating it as an ex parte proceeding quasi in rem, looking to a judgment of condemnation against the property attached and having the incidental object of compelling defendant's appearance, on the one hand, and the action in personam, with its appropriate incidents, * * * on the other," and with respect to due process in foreign attachment proceedings, it said: "The due process clause does not impose upon the states a duty to establish ideal systems for the administration of justice, with every modern improvement and with provision against every possible hardship that may befall. It restrains state action, whether legislative, executive, or judicial, within bounds that are consistent with the fundamentals of individual liberty and private property, including the right to be heard where liberty or property is at stake in judicial proceedings. But a property owner who absents himself from the territorial jurisdiction of a State, leaving his

property within it, must be deemed ex necessitate to consent that the state may subject such property to judicial process to answer demands made against him in his absence, according to any practicable method that reasonably may be adopted. A procedure customarily employed, long before the Revolution, in the commercial metropolis of England, and generally adopted by the states as suited to their circumstances and needs, cannot be deemed inconsistent with due process of law, * * *."

One of the questions before the court was the constitutionality of Section 4142 of the Code of 1915, § 4630, Code of 1935. The Court's conclusion was that "the statutes under consideration were not in conflict with the due process provision of the Fourteenth Amendment."

The pertinent part of Section 4630 is hereinabove set out. It authorizes the issuance of a writ of foreign attachment against "any person not an inhabitant of this State." Section 4631, under which the writ in this case was issued, authorizes the issuance of a writ against "any corporation, aggregate or sole, not created by or existing under the laws of this State." In other respects the pertinent language of the Sections is so nearly identical that I must hold that the decision in the Ownbey case is binding on this Court on the question of the process, as I consider the factual situation in the Ownbey and the instant case substantially the same. In each of the cases the plaintiff was a citizen of a foreign State, and the property seized under the writ was shares of stock in a Delaware corporation. In one case the defendant was a non-resident, and in the other it was a foreign corporation. In each case the cause of action was in contract, a foreign cause in this case, whether this is so in the Ownbey case does not specifically appear, but in each case the cause of action was a transitory cause, and as such within the general jurisdiction of the Superior Court.

That which has been herein stated applies to the above entitled case. It is also applicable to two other cases against the same defendant, being Nos. 137 and 138, May Term, 1945. The plaintiffs in No. 137 being Jacob Blaustein, Henrietta Blaustein, Fanny B. Thalheimer and Ruth B. Rosenberg, Executors of Louis Blaustein, deceased, who are not residents of Delaware, and who are the Executors of a person, who at the time of his death, was not a resident of Delaware, and the plaintiff in No. 138 being American Trading and Production Corporation, which is a Maryland corporation.

I am of the opinion that the motion of the defendant in each of the three cases to vacate the judgments nisi entered therein, and to dismiss the attachment proceedings therein, should be denied.

Appropriate orders will be signed in accordance with this opinion.